SCOTT *v.* STATE.

Opinion delivered November 4, 1929.

*H. B. Means,* for appellant.

*Hal L. Norwood,* Attorney General, and *Pat Mehaffy,* Assistant, for appellee.

MEHAFFY, J. The appellant was convicted for malicious mischief in the justice of the peace court on June 15, 1929. It was charged that he unlawfully, willfully and maliciously cut and tore down a wire fence, the property of C. C. McGrew. He appealed to the circuit court, where he was tried, found guilty by a jury, and fined $50, and he has appealed to this court for a reversal of the judgment.

His first contention is that the court erred in refusing to give instruction No. 1 requested by the defendant. Said instruction was as follows: "You are instructed that under the law and testimony of this case you should find the defendant was not guilty." It is contended that there was no legal evidence upon which to base the verdict.

C. C. McGrew testified that on the 3d day of June, 1929, he was informed that his hogs were out of the pasture; that he went down to the pasture, and found that the net-wire fence was cut, and saw hog tracks where the hogs went out, and that there were also a man's tracks there. It had rained the night before, and he could see the tracks. He could find the man's tracks and hog tracks all along at different places, and tracked them down to the road that turns down to John Scott's house. He looked in Scott's pasture, and found hog tracks going out of his lot into his pasture. He did not find his hogs, but they returned home on the third day after his fence was cut.

Oscar Deal testified that on the same day he saw Roy Scott tolling two hogs; that he turned down the railroad.

Mrs. Jonah Hartsell testified that she saw Roy Scott on the third day of June tolling two hogs, and that he tolled them up toward John Scott's (appellant's father's) house.

Mrs. John Henson testified that on the same day she saw Roy Scott tolling hogs, and he carried the hogs in the direction of his father's house, and the next day the

same hogs came to her house. A son of Mrs. Henson testified to the same effect.

Joe Pilcher testified that on the 3d day of June he passed McGrew's pasture, and saw his fence had been cut, and saw a man's tracks and hog tracks where the fence was cut.

Shorty Nugent also testified that he saw Roy Scott tolling hogs, and the defendant did not testify, but his father, John T. Scott, testified that he had two hogs that got out on the 3d of June; that Roy Scott found the hogs, and tolled them home and put them in his pasture; that one of the hogs was the mother of the two that McGrew had, and the other was the sister that was marked the same as the two McGrew had.

It will be seen therefore that the testimony tending to show that the appellant cut the fence was circumstantial, but we think the testimony that the fence was cut, the hogs missing, and that Roy Scott was seen tolling hogs of the description of McGrew's hogs, was sufficient to submit the question to the jury as to whether Roy Scott cut the fence.

This court has said repeatedly that the jury are the judges of the credibility of the witnesses and the weight to be given to their testimony, and in testing the legal sufficiency of the evidence to warrant the jury in returning a verdict of guilty it must be viewed in the light most favorable to the State. *Campbell* v. *State,* 170 Ark. 936, 282 S. W. 4.

Appellant next contends that instruction No. 2 given at his request, and instruction No. 8 given at the request of the State, are in hopeless conflict. We do not agree with appellant in this contention. Instruction No. 2 given at the request of the defendant was as follows: ''You are instructed that a defendant, at his own request, but not otherwise, shall be a competent witness on the trial, but his failure to make such request shall not create any presumption against him.''

No. 8 was an instruction telling the jury that they were the sole and exclusive judges of the weight of the

evidence and credibility of witnesses, and it told them that, in weighing a witness' testimony, they might take into consideration certain things. But it also told them that the defendant's testimony must be weighed by the same rule as the testimony of other witnesses. This instruction was the usual instruction given in cases where the defendant testifies, and doubtless the court overlooked the paragraph in it with reference to the testimony of the defendant. But it was a correct instruction as a whole, and the defendant did not make any specific objection nor call the court's attention to the fact that the instruction mentioned defendant's testimony. There is certainly no conflict between it and No. 2 given at defendant's request. No. 2 simply told the jury that the defendant might testify, but that his failure to do so should not create any presumption against him. Certainly that cannot be said to be in conflict with a statement to the jury that they should weigh a defendant's testimony by the same rules they do the testimony of other witnesses. At any rate, no specific objection was made, and, for that reason, appellant cannot urge the error here. But he says it was prejudicial because it necessarily called the jury's attention to the fact that the defendant had failed to testify in his own behalf. The fact is that the appellant himself had asked the instruction calling the jury's attention to this fact.

Appellant also contends that the court erred in giving instruction No. 7. This is an instruction frequently given, and no specific objection was made to that part of it of which the appellant now complains. The instruction reads as follows: ''You are instructed that a reasonable doubt is not any possible or imaginary doubt hatched up for the purpose of an acquittal, because everything that depends upon human testimony is susceptible of some possible doubt. To be convinced beyond a reasonable doubt is that state of the case which, after entire consideration of the testimony, leaves the minds of the jurors in that condition that they feel an abiding conviction to a moral certainty of the truth of the charge.''

The appellant says that this was a reflection on the witnesses in the case, the defendant and the attorneys, to use the expression "hatched up for the purpose of an acquittal." We do not think so. It was not a reflection on any one, but it was a statement to the jury that the doubt referred to as a reasonable doubt was not any possible or imaginary doubt hatched up for the purpose of an acquittal. We think this expression, "hatched up for the purpose of acquittal," should not have been used in the instruction, but the appellant made no specific objection. If he had called the court's attention to it, it would have doubtless been corrected, and he failed to do this.

The defendant was convicted on circumstantial evidence, but there is no difference in the effect between circumstantial evidence and direct evidence. In either case it is a question for the jury to determine, and, if the jury believes from the circumstances introduced in evidence, beyond a reasonable doubt, that the defendant is guilty, it is the duty of the jury to find him guilty just as it would be if the evidence was direct. There is no greater degree of certainty in proof required where the evidence is circumstantial than where it is direct, for in either case the jury must be convinced of the guilt of the defendant beyond a reasonable doubt. They are bound by their oaths to render a verdict upon all the evidence, and the law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of the fact may be inferred. Nichols' Applied Evidence, vol. 2, § 4, 1065; Underhill's Criminal Evidence, pages 14 and 16.

We think the evidence was sufficient to warrant the jury in finding the defendant guilty, and that there was no reversible error committed by the court, and the judgment is therefore affirmed.