SPEAR *v.* STATE.

Opinion delivered December 21, 1931.

*Hardin & Barton,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

Butler, J. Between 8 and 9 o'clock on the night of January 28, 1931, three masked men appeared at the Reynolds Drug Store in the northeast section of the town on Van Buren in an automobile. Two of these men entered the drug store, and the third, described by witnesses as a very tall man, stood on the outside near the curb where the car was parked. All three were armed with pistols and masked, and the two who entered the store proceeded to rob it. While the robbery was going on a young man named Brown, accompanied by a young lady, parked his car on the opposite side of the street from the drug store and, observing what was occurring, took his pistol from the pocket of the car and ran across the street in the direction of the drug store and opened fire upon the man standing on the outside. In an interchange of shots between the two Brown was killed. The two men in the drug store had completed the robbery, and the three immediately left and made their escape, the one on the outside leaving in the car, the other two on foot.

At the March term, 1931, of the Crawford Circuit Court following the robbery an indictment was returned by the grand jury charging the appellant, Percy Spear in common-law form with having, on the date aforesaid with malice aforethought and after deliberation and premeditation, killed Elmo Brown by shooting him with a gun, etc. When the case was called for trial, the defendant filed his motion for a change of venue on the ground that the minds of the inhabitants of Crawford County were so prejudiced against him that he could not get a

fair and impartial trial in said county. This petition was supported, by the affidavits of 15 or 16 persons. The motion was overruled by the court, and proper exceptions were saved to the action of the court. After a demurrer had been interposed to the indictment, which demurrer was overruled, the defendant was duly arraigned and the case tried before a jury, and the trial resulted in the conviction of the defendant for the crime of murder in the second degree, with punishment fixed at imprisonment in the State penitentiary for a period of twenty-one years.

■ It is first insisted on appeal that the court erred in overruling the motion for the change of venue, the contention being that the examination of those who signed the supporting affidavits disclosed the state of mind of the inhabitants of the county as alleged, and that their examination showed that they were credible persons within the meaning of the statute. After a careful consideration of the testimony of these affiants, we cannot say that the trial court abused its discretion in denying the petition. There were ten affiants examined at length, which testimony requires fifty-eight pages of the transcript to record it. It would be impracticable to set out this testimony, but we have carefully read, not only the examination of the affiants abstracted by the appellant, but that of the others as well, and we conclude that their opinion was based on insufficient information. It was formed largely from gossip on the streets of Van Buren and by the expression of opinion of a few persons from some of the outlying townships, and the prejudice, if any, existing in the minds of the people appears to have been more against the crime itself than the individual accused of having committed it. It naturally aroused great feeling and resentment in the minds of all who heard it and an earnest desire that the guilty person, whoever he might be, should be punished. Some of the prejudice appears to have been directed more against the sheriff than against any one else, but this seems to have been entertained by only a very few.

The county contained 37 townships and several thousand qualified electors, and none of the affiants testified as to any prejudice except in a few of these townships and as to a limited number of people. It was not shown that the jury was drawn from that part of the county where the prejudice existed, and we must indulge the presumption that the court endeavored to secure jurors who were unaffected by passion and without prejudice to the defendant. As is held in *Spurgeon* v. *State*, 160 Ark. 112, 254 S. W. 376, called to our attention by the appellant. "There is a presumption as to the credibility of supporting affiants which must be overcome before the affidavits can be disregarded." But in the conduct of a criminal case a wide latitude must necessarily be given the trial judge in passing upon questions of this kind, and it must always be assumed that his rulings are based upon a fair and impartial consideration of the questions before him, and his decision ought not to be disturbed unless it clearly appears that his action is arbitrary. He is not obliged to conform to the opinions of the affiants where it appears that those opinions are formed upon no substantial basis.

We have not overlooked the supplemental typewritten brief filed by the appellant or the suggestion that the original transcript fails to show the evidence of a number of persons at the hearing of the petition, nor the argument that, as the presumption of credibility attaches to the affiant, it must be presumed that these persons were credible within the meaning of the statute, and that therefore the prayer of the petition ought to have been granted. The answer to this is that the statute requires the supporting affidavit to be made by two credible persons having the requirements mentioned, and, while it is silent as to the number in excess of two who may affirm the truth of the petition, the court is not required to examine an indefinite number. Here ten were examined at length, and it was the privilege of the defendant to present those of the affiants whom he believed to be most thoroughly acquainted with the sentiment of the minds of

the inhabitants of the county for examination by the court, and the record should affirmatively show that these witnesses were presented and their examination refused. The mere suggestion that their examination was not incorporated in the transcript and impliedly that it was not made is not sufficient.

■ It is next urged that the court erred in refusing to excuse certain jurors for cause and excusing others. A juror, being examined as to his qualifications, in answer to questions stated, in effect, that, if the facts he had heard were true, it would tend to establish an opinion in his mind, and that at the time of the examination he had an opinion regarding the guilt or innocence of the defendant which it would take evidence to remove, if what he had heard was proved to be true. The question was, "You have an opinion," and the answer, "Yes, if what I heard is true, I have an opinion." Answering further a question of the court, he said that he thought he could disregard the opinion and try the man as fairly and impartially as if he had not heard of the case. From the record of his examination, it is obvious that this opinion was not formed from any statement he had heard made by witnesses in the case, but from newspaper accounts and general discussion. The opinion was therefore based upon rumor. Counsel for appellant say that under the authority of *McGough* v. *State*, 113 Ark. 301, 167 S. W. 857, this was a disqualification and ground for the excusal of the juror for cause. Counsel misinterpret the rule stated in that case. There the rule stated was that the entertainment of preconceived opinions about the merits of a criminal case renders a juror *prima facie* incompetent, but, where it is shown that the opinion was founded on rumor not of a nature to influence the verdict of the juror, he is qualified. It may happen that the examination of the juror will disclose a fixed opinion, although based upon rumor only. Then, of course, the prospective juror cannot be disinterested or unbiased, and is therefore disqualified. But where he is able to say that he can disregard the opinion, and give to the evidence a

fair consideration, and from that reach his conclusion as to the guilt or innocence of the defendant, he is not disqualified. We think this is the purport of the statement made by the juror, and that the court correctly held him qualified. It may be said, moreover, that no prejudice has been shown by the ruling of the court. The abstract does not show the disposition made of the juror, whether he was taken or peremptorily challenged by the defendant, or that he was forced to exhaust his challenges because of the court's action.

Two of the jurors were excused for cause by the court because they announced that they were opposed to capital punishment, and another because it appeared that he was one of the signers of the supporting affidavits on defendant's petition for change of venue, although the juror stated on his *voir dire* that he had no interest in the case and was unacquainted with the facts. We are committed to the rule that in the conduct of a trial the trial court is clothed with wide discretion, and necessarily so, for the proper and expeditious dispatch of its business, and that this court will not interfere with the action of the trial court where there is no violation of some mandatory provision of the law, or unless it is shown to have operated to the prejudice of the party complaining. *Mabry* v. *State*, 50 Ark. 492, 8 S. W. 823; *Pate* v. *State*, 152 Ark. 553, 239 S. W. 27; *Sullivan* v. *State*, 163 Ark. 11, 258 S. W. 643. As is said in *Rose* v. *State*, 178 Ark. 980, 13 S. W. (2d) 25: "Appellant was not entitled to have any particular jury to try his case. It does not appear that he challenged any of the jurors for cause, nor does he make it appear that any of them were prejudiced against him. Hence he was in no attitude to complain of the manner in which the jurors necessary to complete the full panel were selected, in the absence of any showing that the members of the special panel were prejudiced against him." See also *Bennett* v. *State*, 161 Ark. 496, 257 S. W. 372.

■ The next assignment of error is that the court erred in admitting incompetent testimony and in refusing to admit other testimony which was competent. The testimony thought to be incompetent was a part of Mrs. Reynolds' testimony relating the facts connected with the robbery of the store where the shooting took place, and to the effect that the defendant and one Clifton Harback were about the same size as the two men who robbed the store. The objections to this testimony is that it varies from the charge of the indictment, to-wit: that the defendant murdered the deceased by shooting him with a gun with malice aforethought and after deliberation and premeditation. There was no error committed by the court in this regard, for reasons we shall state in our discussion of instruction No. 1, given at the request of the State, and to which objection was made. The same objection was made to the testimony of the witness Luke Smith, who testified about the same matters as did Mrs. Reynolds. Objection was also made to the testimony of a Mrs. Beavers, in which she stated that she had seen the defendant with Allan Taylor in Fort Smith on the day of the robbery. It is argued that this testimony was irrelevant and prejudicial because Allan Taylor was a man of bad reputation in that county, known to be such by the people of the county, and that the testimony was introduced only for the purpose of creating prejudice against the defendant. This testimony might have had but slight bearing on the question of defendant's guilt or innocence, but, when the remainder of the evidence is considered, it may have had some. It may be very true that Allan Taylor was a man of such reputation as would likely create prejudice against one who continually associated with him, but we cannot say that this was the purpose of the testimony, as we have been unable to find from the record any evidence relating to the reputation of Taylor.

Exception is taken to the action of the court in permitting Cons Wilson to testify regarding the actions of the defendant at the house of a Mrs. Brannon at about

nine o'clock on the evening of the robbery, and to relate his conduct in her house later on; also in permitting Wilson Reynolds to detail the story of what happened relating to the robbery, and as to what was taken by the robbers from the store, and to state that in his judgment the defendant was about the same size as one of the robbers; also in permitting a Mrs. High to testify that she had an automobile taken from her house between five and eight o'clock on that evening, and in permitting the witness Patterson to testify about finding the car the next day and relating what marks he discovered on the body of the car when found. Numerous other objections were taken to the testimony of other witnesses substantially the same as those before specifically mentioned and to testimony regarding a pistol having been found back of Mrs. Brannon's house. There was no error committed in the admission of this testimony as will appear when the evidence is hereafter summarized.

A. D. Maxie, the sheriff, testified as to his investigations during the night of the robbery and homicide, and was asked, "Did you receive any information as to the whereabouts of Percy Spear?" He answered: "We were out all night making investigations and the next day doing the same thing, and along late in the afternoon of the following day we got information that Percy Spear and two other boys were the ones that did it." It is argued that this testimony was hearsay. If this is true, appellant cannot now complain. While the record shows that the statement was objected to, that objection was not pressed upon the attention of the court, and no ruling asked or given, nor was the court requested to exclude it from the jury or to admonish the jury that it was incompetent and to disregard it, for, after the objection was interposed, counsel for the State interrupted, admonishing the witness to "just tell what you did." and the witness then proceeded to relate the discovery by him of the whereabouts of Spear and of his subsequent arrest. The failure to request a ruling on the objection, and that the jury be admonished to dis-

regard this testimony waived the objection. *St. Louis & S. F. Ry. Co.* v. *Brown*, 62 Ark. 254, 35 S. W. 225; *Whaley* v. *Vannatta*, 77 Ark. 238, 91 S. W. 191; *Roberts* v. *State*, 96 Ark. 58, 131 S. W. 60.

■ The principal ground urged for the reversal of the case is for the alleged error of the court in giving instruction No. 1 at the request of the State. This instruction is as follows:

"The court instructs the jury that if you find from the evidence beyond a reasonable doubt that the defendant, Percy Spear, in Crawford County, Arkansas, and within three years from the finding of this indictment, entered into a conspiracy with any other person or persons to rob the Reynolds Drug Store in the city of Van Buren, Arkansas, and that the defendant with such other person or persons with common intent to rob same did rob said Reynolds Drug Store with a common purpose, and you further find from the testimony beyond a reasonable doubt that by reason of such common conduct on their part and while carrying out such common purpose and intent, an altercation arose on account of the carrying out of such common conduct in which Elmore Brown was shot and killed by either one of the persons so engaged, the defendant, Percy Spear, being present aiding and abbetting in the acts and conduct aforesaid of his companion or companions, then each would be guilty of an unlawful homicide in some degree, and if the fatal injury was inflicted upon Elmore Brown with malice aforethought but without premeditation or deliberation, then the defendant would be guilty of murder in the second degree, and if the fatal injury was inflicted on Elmore Brown with malice aforethought and after premeditation and deliberation by either one of the three, then the defendant, Percy Spear, would be guilty of murder in the first degree, and if the fatal injury was inflicted without malice and without deliberation, but upon a sudden heat of passion caused by provocation apparently sufficient to make the passion irresistible, then the defendant would be guilty of manslaughter."

It is insisted that, as the indictment did not charge murder committed in the perpetration of robbery under § 2343 of Crawford & Moses' Digest, but charged in common-law language the commission of murder by killing done with malice aforethought, deliberation and premeditation, the instruction was erroneous under the rule announced in *Rayburn* v. *State,* 69 Ark. 177, 63 S. W. 359, and in *Shepherd* v. *State,* 120 Ark. 160, 179 S. W. 168. In those cases the indictments, as in this case, charged the commission of murder at common-law, and the instructions held to be erroneous in those cases were as follows: "If you find from the evidence beyond a reasonable doubt that defendant, in perpetration of, or in the attempt to perpetrate, the robbery * * *, shot and killed (deceased), then defendant is guilty of murder in the first degree and you will so find." The decision reached by the majority of the court in the Rayburn case appears to have been based upon the reasoning of the court in the case of *Cannon* v. *State,* 60 Ark. 564, 31 S, W, 150; 32 S. W. 128. In the Rayburn case it was held that the indictment charged one crime and the instruction stated another and different one, and that, as a defendant could not lawfully be convicted of a crime with which he was not charged, the instruction was erroneous. But that part of instruction No. 1 in the case at bar urged as error is not at all like the instruction in the Rayburn case. It simply told the jury that if the defendant entered into a conspiracy with other persons to commit a robbery and if, while in the prosecution of the common design, Brown was killed by either one of the persons, defendant being present aiding and abetting in the acts of his companion or companions, then each would be guilty of an unlawful homicide in the same degree. This is the law. The general rule is that all who join in a common design to commit an unlawful act, the natural and probable consequence of which involves the contingency of taking life, are responsible for a homicide committed by one of them while acting in pursuance or furtherance of the common design, although the homicide

might not have been in contemplation of the parties when they conspired to commit the unlawful act, and although the actual perpetrator is not identified. This rule was recognized in *Carr* v. *State,* 43 Ark. 101. In that case reference is made with approval to the case of *Stephens* v. *State,* 42 Ohio St. 150, where the indictment appears to have been one which charged the offense of murder at common law. The trial court gave the following instruction: "That if Luke Jones, William Jones and Laban Stephens entered into a conspiracy to commit a robbery on the person of Anderson Lackey and that the evidence also shows that the attempt to perpetrate such robbery, under all the circumstances, would naturally, reasonably and probably involve the taking of the life of Lackey, and then from the evidence that in attempting to perpetrate such robbery that one of the co-conspirators of defendant unlawfully and maliciously assaulted and shot Anderson Lackey with the intent to take his life and that by such assault and shooting gave him a mortal wound, * * * then the defendant is equally guilty in law * * * as if done with his own hand, whether he was present when the assault and shooting were done or not." The Supreme Court, in approving this instruction, said: "If several are associated together to commit a robbery and one of them, while all were engaged in the common design, intentionally kills the person they are attempting to rob in furtherance of the common purpose, all are equally guilty, though the others had not previously consented to the killing, where such killing was done in the execution of the common purpose and was a natural and probable result of the attempt to rob. * * * Each is presumed to have intended to authorize the other to kill if in perpetrating the robbery it became a necessary means to its consummation."

In *Brista* v. *State,* 126 Ark. 565, 191 S. W. 7, the appellant was indicted for murder in the first degree, the indictment in apt words charging him with that crime, committed by killing one Sweetie Statcher. The facts were that appellant, after having had a fight with a negro

man, started out with some companions looking for him. They reached a house, the door of which was closed, and in which several negroes then were. It was thought that the negro they were seeking was one of these inside the house. They were told by those within that the negro they sought was not there. They demanded that the door be opened, and, no one answering, the companions of appellant began shooting through the door, one of the shots striking a child and killing it. The court held that under these facts the appellant, although he did not fire the fatal shot, was guilty of murder. In the late case of *Boone* v. *State,* 176 Ark. 1003, 5 S. W. (2d) 322, this rule was expressly approved.

It will be observed that the jury are merely told that, if the killing was done by one of a number while engaged in the perpetration of a felony, the defendant would be guilty of some degree of unlawful homicide, and not that he would be guilty of murder in the first degree; and the instruction further told the jury that the degree of homicide would depend upon whether it was committed with malice aforethought only (for then it would be murder in the second degree), or if with malice aforethought, deliberation and premeditation by either one of the three, it would be murder in the first degree, and that if the homicide was committed without malice, but upon a sudden heat of passion, etc., the crime would be manslaughter. We think this instruction was responsive to the indictment and not subject to the objection urged.

Instruction No. 2, said by appellant to be erroneous, first recites the indictment and, continuing, informs the jury that it is competent under the indictment, if the proof justifies it, to convict the defendant of murder in the first or second degree, or of manslaughter, or to acquit him outright. Instructions similar to this have been many times given and approved, and are not subject to the criticism made.

Objections were made to the instructions of the court given on its own motion. These dealt with the law of self-defense. We agree with the appellant that these

instructions were improperly given, but it is an error of which he may not complain, as they were more favorable to him than he could ask. The proof shows that the killing occurred while the slayer was engaged in the perpetration of a robbery. It is well settled that one who, while in the actual perpetration of a felony by violence, kills another person who is attempting to prevent the felony, cannot plead self-defense. 30 C. J. 49. This would be true even though the person attempting to prevent the felony and who was killed began firing first. *State* v. *Hart*, 292 Mo. 74, 237 S. W. 473.

■ It is lastly and strenuously urged that the evidence failed to connect the appellant with the commission of the crime, and that the court should have directed a verdict of not guilty as requested by appellant. It follows from what we have already said that the evidence of the robbery and its attendant circumstances was competent. It disclosed that the two who entered the store were masked so that their features could not be identified, but they were about the same height and weight, and the proprietor of the drug store, who was the first to come in contact with the two robbers, stated that they were armed with automatic pistols, one of which was nickel-plated, and that the defendant Spear corresponded in size to them. Spear had been seen in Van Buren about two days before the robbery, and again he was seen at the house of a Mrs. Brannon at about seven o'clock on the evening of the robbery. He came there on that occasion in an automobile, a description of which witnesses could not give. Late in the afternoon of that day or early in the evening a Buick coupe belonging to Mrs. High was taken from in front of her house and was discovered in the town the next day with a mark on the fender similar to that which might be made by the impact of a bullet. Spear stayed at Mrs. Brannon's only a short time after he arrived there about seven o'clock, but returned again about nine o'clock and not in an automobile. He was under the influence of intoxicating liquor and had some with him which he offered to some of the per-

sons at Mrs. Brannon's. He was observed to go to the back part of the house, from which he returned after a time and appeared to be restless. He had a quantity of small change, which he emptied out before him and offered to, and did, exchange $1.25 of this for a $1 bill. On being asked how he happened to have so much small change, he said that he had won it in a crap game over the river. At about this time some one came to Mrs. Brannon's and told of the robbery, and in the course of the conversation Spear stated that he had driven to Mrs. Brannon's in a Chevrolet car. An investigation was made that night by the officers, and Spear and one Clifton Harbach were suspected of implication in the commission of the crime, and the officers visited Mrs. Brannon's house inquiring for Spear. The next morning they returned, and in the course of their investigation found an automatic .32 calibre revolver hidden near the back of the premises under a piece of tin. Two or three days later Spear was discovered in Little Rock living under an assumed name.

The appellant interposed the defense of an alibi, and there were a number of witnesses who testified in positive terms that before and at the time of the robbery, appellant was on the opposite side of the Arkansas River from the drugstore. It must be conceded that the evidence tending to connect Spear with the commission of the crime is wholly circumstantial, and some of the circumstances have but slight probative value, but, when considered together with the inferences reasonably deducible therefrom, we think the evidence tending to establish his guilt is of a substantial nature. The probative value of circumstantial evidence is discussed in the case of *Scott* v. *State,* 180 Ark. 408, 21 S. W. (2d) 186, where the declaration is made that ''there is no difference in the effect between circumstantial evidence and direct evidence. In either case it is a question for the jury to determine, and if the jury believes from the circumstances introduced in evidence beyond a reasonable doubt that the defendant is guilty, it is the duty of the jury to

find him guilty, just as it would be if the evidence was direct. There is no greater degree of certainty in proof required where the evidence is circumstantial than where it is direct, for in either case the jury must be convinced of the guilt of the defendant beyond a reasonable doubt.''

The jury had before it the witnesses who testified as to the alibi, and it has found that they were unworthy of belief. The jury is the exclusive judge of that question and its verdict is binding on us. From the evidence in the whole case the jury was satisfied that the defendant was guilty, and we cannot say that it was mistaken. Learned counsel for appellant has ably argued the errors assigned, but we are of the opinion that no prejudicial error was committed by the trial court, and that the testimony was reasonably sufficient to sustain the verdict of the jury.

The judgment is affirmed.