CARADINE *v*. STATE.

Crim. 3895

Opinion delivered October 8, 1934.

*Kenneth C. Coffelt* and *Wm. J. Kirby,* for appellant.

*Hal L. Norwood,* Attorney General, and *Pat Mehaffy,* Assistant, for appellee.

MEHAFFY, J. The appellant, Hiram Caradine, was indicted, tried and convicted for robbery, and sentenced to three years in the penitentiary. To reverse the judgment of conviction he prosecutes this appeal.

Dr. C. W. Jones testified in substance that on the morning of January 13, 1934, at about 2:15 o'clock, he was awakened by some one at his door, and when he went to answer the doorbell, he found a man on the porch who informed him that he had been sent to ask the doctor to come to Haskell immediately to see one Louis Westbrook, a patient of his, who, the man said, was seriously ill. The man said he was from Little Rock and had been sent as a messenger. Dr. Jones asked him if he was going back there, and he said, "Yes," and that he would wait for

him at the drug store and ride back with him. The man helped Dr. Jones clean the ice off of the windshield and they drove on highway 67 at about twenty-five miles an hour. Dr. Jones then saw a car coming out behind them, and started speeding up, going about thirty-five miles an hour. They traveled faster than the car behind, and the man, who the doctor afterwards learned, was Virgil Smith, said he was visiting some boys there, and to let him out. They were then close to the old Hot Springs Highway, and at this time the other car was some distance behind. Smith backed out of the door and pulled a gun on the doctor, and told him to raise his hands, and cursed him, and then the other car came up from behind. Some one came running up and ordered witness to get out on the side. The doctor had driven to the side of the road at the intersection to let Smith out. The other man and Smith robbed witness. They took from him a $5 bill and $2 or $3 in silver, searched him for a gun, and Smith came around the car and got in behind the wheel and drove out on the Hot Springs highway. Brooks Brown, the other man, backed up against the windshield and kept witness covered with his gun. The other car then followed them out. They were going about thirty miles an hour. They cursed the doctor. The car behind dropped back and then picked up again, and, as they got past where Connie Smith lived, they turned off on a side road and ordered witness to get out and they tied him to a tree. It was cold, and Dr. Jones asked them to turn his coat collar up. He got loose before they got out of sight and ran up the road to Connie Smith's, and Smith brought him to town. Witness never did see the party who drove the car behind, but knew there was a third party driving the car, as two of them, Smith and Brown, got in the car with him, and the other car followed them about three miles. He does not know whether the appellant was in the car or not. It was a cold night and there was ice on the windshield. The sheriff, Mr. Rucker, got witness' car back. The car was worth about $450. Louis Westbrook lives at Haskell, and witness was their family physician. Witness had no way of identifying the man in the rear car. He did not know Smith and Brown,

but had seen Caradine, the appellant, before. It was Saturday morning, January 13th, when Smith went to witness' house.

While Dr. Jones did not identify Caradine, Fred Newcomb, V. L. Landers, C. H. Womack, Mary Jane Holder and Mary Westbrook all knew the appellant and saw him in Benton on Friday afternoon and Friday night, and it is shown by some of these witnesses that he left the pool hall after twelve o'clock Friday night, and he and Smith and Brown got into a car and rode away, and the same car was seen with three men in it up until two o'clock Saturday morning.

The appellant testified very positively that he had nothing to do with the robbery, and that he left Benton at ten o'clock Friday night and walked home; that he went by his uncle's house and spoke to him, and his uncle testified to the same facts.

The evidence also shows that Smith, Brown and the appellant had been together, and that Smith and Brown had stayed at appellant's house on Thursday night before the robbery.

Appellant contends first that the evidence was not sufficient to sustain a conviction. It is true that Dr. Jones did not recognize appellant, but Fred Newcomb knew Caradine, and testified that Caradine, Smith and Brown came into his filling station Friday night about ten o'clock, and that he spoke to appellant; that they were in a car.

C. H. Womack testified that appellant and Smith and Brown were in his pool room until after twelve o'clock Friday night.

V. A. Rucker, the sheriff, knew the three parties, and after the robbery he was called at about 3:20 in the morning, and afterwards went to Oklahoma and found Dr. Jones' car and also found Smith and Brown.

Mary Jane Holder testified that she knew the appellant and Smith and Brown, and saw Smith and appellant in Benton, Friday afternoon about five o'clock. They were in a car but witness did not know whose car. She had met both Smith and Brown through appellant.

May Westbrook knew the parties and testified that she was at the appellant's home on Thursday morning before the robbery, and that Smith and Brown were also at appellant's home, and that they all left together.

The testimony of the witnesses for the appellant is in direct conflict with the testimony of the witnesses for the State. The witnesses for the State show that the appellant was in Benton after twelve o'clock; their testimony shows that he got in a car with Smith and Brown at 12:20, and the same car was seen by witnesses with three men in it, and while the witnesses did not recognize all three men, they did recognize the car and Smith as the driver. But, if the State's witnesses are telling the truth, then the testimony of the appellant's witnesses could not be true. If appellant was in Benton after twelve o'clock, he could not have left there at ten o'clock, and have been at his home, eight miles from there, at twelve o'clock.

The jury evidently believed the State's witnesses, and, if they did, they could not believe the appellant's witnesses, and it was a question for the jury, and not for this court.

We recently said: "The testimony was entirely circumstantial, but, if believed, it was sufficient to justify the jury in finding the appellant guilty. The jury are the judges of the credibility of the witnesses and the weight to be given to their testimony. Therefore, in determining whether the evidence is sufficient to support the verdict, this court must consider the evidence in the light most favorable to the State, and, when this is done, it cannot be said that the evidence did not warrant the jury in returning the verdict of guilty." O'Neal v. State, 179 Ark. 1153, 15 S. W. (2d) 976.

We think that the testimony of the State's witnesses that appellant and Smith and Brown got into the car after twelve o'clock and were seen to drive on the streets of Benton, and that thereafter they saw the same car with three men in it, driven by Smith, was sufficient, if the jury believed it, to warrant the finding that the appellant was with Smith and Brown at two o'clock, just before Smith went to Dr. Jones' door.

Appellant cites and relies on *Bowie* v. *State,* 185 Ark. 834, 49 S. W. (2d) 1049. The court there was discussing circumstantial evidence, and it said, among other things: "This character of evidence, however, has certain disadvantages. A jury has not only to weigh the evidence and the credibility of the witnesses, but to draw just conclusions from the circumstances in proof, and in doing so it may, by want of due deliberation, make hasty and false deductions and be swayed in its judgment by prejudice or partiality. This demands that in a case depending upon circumstantial evidence the circumstances relied upon must be so connected and cogent as to show guilt to a moral certainty, and must exclude every other reasonable hypothesis than that of the guilt of the accused."

Among the circumstances relied on in this case are the following, about which there can be no dispute: the appellant was raised in Haskell community; he knew Dr. Jones and Louis Westbrook, and knew that Jones was Westbrook's family physician; he was with Smith and Brown Thursday night at his home; he was with them in Womack's pool hall Friday night until after twelve o'clock; he left the pool hall and got into the car with Smith and Brown; they drove away together, three of them being in the car; they were seen driving on the streets of Benton several times after that; the same car was seen with three men in it as late as two o'clock; Smith and Brown did not know Jones, and shortly after two o'clock Smith went to Jones' door and told him that Westbrook at Haskell was seriously ill, and wanted him to go at once; he and Dr. Jones started in Dr. Jones' car; another car followed them; when they got about one-half of the way to Haskell, Smith got out of the car and drew a gun and Brown came up from the rear car, and they robbed Dr. Jones and tied him to a tree, and then drove Jones' car away, and the other car followed; Smith and Brown neither were in the other car; somebody was in the other car and started it and drove it, following Dr. Jones' car.

We think the circumstances show conclusively that this driver of the other car was appellant. There can be

no reasonable doubt that it was the appellant, if the witnesses for the State have told the truth, and, as to whether they have or not, the jury, and not this court, is the judge.

This court recently said: "The court correctly refused to direct a verdict for appellant, Oliver, for the reason that he was not present when the other two robbed Geren. It is true that Oliver was some distance away guarding the other victims, but it is also true that they were all three participating in the same common purpose, all being conspirators, having the common purpose of committing the crime of robbery. In such case the act of one would be the act of all."

The appellant was convicted on circumstantial evidence, but there is no difference in the effect between circumstantial evidence and direct evidence. In either case it is a question for the jury to determine, and, if the jury believes from the circumstances introduced in evidence beyond a reasonable doubt that the defendant is guilty, it is the duty of the jury to find him guilty, just as it would. if the evidence was direct. There is no greater degree of certainty in proof required where the evidence is circumstantial than where it is direct, for in either case the jury must be convinced of the guilt of the defendant beyond a reasonable doubt. *Scott* v. *State,* 180 Ark. 408, 21 S. W. (2d) 186; 2 Nichols' Applied Evidence, § 4, 1065; Underhill's Criminal Evidence, 14 and 16; *Spear* v. *State,* 184 Ark. 1047, 44 S. W. (2d) 663; *Kellogg* v. *State,* 153 Ark. 193, 240 S. W. 20; *Williams* v. *State,* 153 Ark. 289, 239 S. W. 1065.

It is next contended by appellant that instruction No. 2 should not have been given. It reads as follows: "You are instructed that if you should find from the evidence in this case beyond a reasonable doubt that the defendant, Hiram Caradine, in Saline County, Arkansas, and within three years next before the filing of the indictment of the case, did, as alleged in said indictment, by force or intimidation steal, take and carry away feloniously and violently the said automobile and seven dollars lawful money of the United States, the personal property of one Dr. C. W. Jones, you will find the de-

fendant guilty and fix his punishment in the State penitentiary at a period of not less than three years nor more than twenty-one years.''

No error was committed in giving this instruction. *Maxwell* v. *State, supra.*

This court does not pass on the credibility of the witnesses nor the weight of their testimony. These are questions for the jury.

We find no error, and the judgment is affirmed.

JOHNSON, C. J., (dissenting). I cannot give my assent to the affirmance of this case. Human rights and liberties should not be taken upon mere conjecture and speculation. Until recently human rights to life, liberty and property were thought to be sacred, but such inroads have recently been made upon these sacred rights that they now appear to be forgotten. The Declaration of Rights provides in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial * * * and be confronted with the witness against him. When jury verdicts are permitted to stand which rest solely upon conjecture and speculation, this wholesome constitutional guarantee is violated.

Moreover, § 3184, Crawford & Moses' Digest, provides, where there is a reasonable doubt of the defendant's guilt upon the testimony in the whole case, he is entitled to an acquittal.

Since statehood, and long prior thereto, it has been the rule in this State that in all criminal cases dependent upon circumstantial testimony the guilt of the accused must be established to the exclusion of every other reasonable hypothesis. *Cohen* v. *State,* 32 Ark. 226; *Benton* v. *State,* 30 Ark. 328.

In the instant case, giving the testimony upon behalf of the State full credence, it falls far short of the established law. No witness saw the accused after about 12 o'clock prior to the robbery, and the victim does not insinuate that the accused had anything to do with the crime. True, accused was seen in Benton on the night before the robbery, but, even so, the robbery was committed some eight miles from Benton. It is true that accused was born and reared near Benton, but, even so,

thousands of other law-abiding citizens were likewise so born and reared, including the learned Justice who has written the majority opinion. It is also true that appellant knew both Brown and Smith immediately prior to the commission of the crime, but just why he should be convicted of this crime because of this is not reflected in the opinion. If appellant is to suffer because of his acquaintance with Brown and Smith prior to the commission of the alleged crime, then of necessity the fathers and mothers, brothers and sisters, and all acquaintances of Brown and Smith should likewise be indicted, tried and convicted.

In the majority opinion much stress is laid upon appellant's testimony in reference to his whereabouts on the night of the robbery. It may be that appellant committed perjury while testifying, but just why this should be considered on this appeal is not pointed out in the opinion. I have always understood that the burden was upon the State to establish the guilt of an accused beyond a reasonable doubt, and this is the only legitimate question before us on this appeal. The weakness of the State's case should not be bolstered up by the falsity of the accused's defense. The question and only question presented here for consideration is, was appellant present, aiding, abetting or assisting in the robbery of Dr. Jones? If he was, he should be convicted. If not, he should be acquitted. No witness testified as a fact or detailed any circumstances tending to show that appellant was present or that he aided, abetted or assisted Brown and Smith in the commission of this crime. No witness by testimony got appellant nearer the scene of this crime than Benton or saw him, for that matter, within three hours of the commission of the crime. The illogic of the situation is apparent. The mere fact that appellant knew Brown and Smith prior to the commission of the alleged crime is not even a circumstance tending to establish his guilt. The mere fact that appellant was in Benton the night preceding the commission of the crime does not prove or tend to prove his connection therewith. The mere fact that appellant was seen in company with Brown and Smith some hours prior to the

commission of the robbery is a mere circumstance tending to show his lack of discretion in selecting his associates and is no evidence of his guilty knowledge of the alleged crime. Neither should appellant be convicted merely because he was reared in Saline County or happened to be in Benton the night preceding the robbery. Human liberty is now jeopardized by a verdict which rests solely upon conjecture, surmise and caprice.

When *Fox v. State,* 156 Ark. 428, 246 S. W. 863, was affirmed in this court, and human liberty was taken upon the testimony of a rabbit hound, corroborated however by finding stolen merchandise upon the premises of the accused, it was generally thought by the profession that the limit had been reached. Subsequently in *Jones* v: *State, post* p. 825, when this court affirmed a judgment and verdict which rested solely upon the smell of whiskey corroborated by the discovery of some broken glass in the appellant's car, I thought assuredly the limit had been reached, but alas, these cases are merely the beginning of a crusade against human liberty.

If the doctrine now announced is adhered to by this court, no citizen's liberty is secure, but rests wholly and solely upon the prejudices and passions of juries, actuated by good or bad motives and limited only by fear of reprisals. Indeed, the time has come when we should re-dedicate the Declaration of Rights and give to constitutional government its paramount purpose, and only justification—the protection of human liberty, the right to own property and the pursuit of happiness.

This case should be reversed and dismissed.