CASTEEL *v.* STATE.

4212                                    152 S. W. 2d 554

Opinion delivered June 2, 1941.

664

*E. L. Hollaway, C. O. Raley* and *Bryan McCallen,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

MEHAFFY, J. The appellant was convicted of the crime of voluntary manslaughter and sentenced to seven years in the penitentiary, and prosecutes this appeal to reverse said judgment.

The appellant urges, first, that the court erred in failing to direct a verdict for appellant; second, that the evidence is insufficient to sustain the conviction.

If the evidence was sufficient to sustain the verdict there was, of course, no error in refusing to direct a verdict. *Graham and Seaman* v. *State,* 197 Ark. 50, 121 S. W. 2d 892.

J. W. Dillon testified that he knew Taylor and the appellant; that he came in from Piggott and started out the back way from the little brown cabin in the back; saw Allen Taylor and Glen Jackson in the little brown house, but does not think he saw appellant in there; there were several men going in and out; first saw Casteel, the appellant, in the dance hall and saw Taylor outside; Taylor asked him if he had a drink and witness told him he did, and they split a half pint; Jim Kerley took the first drink; does not know which came to the dance hall first, Kerley or Casteel, they came about the

same time; the moon was shining; when Casteel came up
he asked: "Is that Henry Dillon?"; witness told him
that it was Jim Kerley, appellant's friend; they then
shook hands; Allen handed Kerley the bottle of whiskey;
Kerley took a drink and started to hand it back to Allen;
Allen turned and walked away and Casteel ran after him
and spilled the whiskey; at that time Allen was not mad,
but he and appellant "wooled" each other around a little
bit, and finally appellant backed off and pulled out a
knife; Taylor said: "Don't get that knife out" and
backed off; Taylor picked up a club, threw it down and
picked up a larger one, and hit appellant with the club;
he threw it down and ran around the house; appellant
ran after him toward the river; witness did not follow
them; he did not see Taylor again that night, but saw
appellant at the dance hall; saw the knife in appellant's
hand before he left, and when he backed off, he had the
knife half opened. A knife was introduced in evidence,
and witness said it was like the knife appellant had; saw
the knife in his hand at the same time that Taylor was
breaking the club. When asked if he had ever been con-
victed of a felony, witness answered that he had been
convicted of being drunk, but had never served in the
penitentiary. The handle of the knife looked white in
the moonlight; witness was at the dance hall until it
closed around four o'clock; the difficulty between Taylor
and Casteel occurred between ten-thirty and eleven-
thirty; witness was drinking, but Taylor did not act like
he had been drinking. Here, a map was introduced in
evidence showing the dance hall and other buildings.
When asked what was Casteel's condition, he answered
that he was pretty drunk, but that Taylor was sober;
Taylor weighed around 150 or 160 pounds, and was about
27 or 28 years old; was healthy and strong; there was no
light outside where Kerley, Taylor, Casteel and witness
were, and he did not see anyone else out there; there
were three or four trees between the dance hall and the
river, but there were lots of trees on the east side of the
dance hall; witness and the other three men were stand-
ing between the hog lot and the north end of the cabin;
they were north of the cabin, halfway between the hog

lot and its north end; after Taylor dropped the stick he went between the river side of the house and the gate; the first blood was found at the gate.

J. C. Kerley testified in substance that he was out at the dance hall the night Allen Taylor was killed; got there about 8:30 or 9 o'clock; saw Dillon, Casteel and Taylor that night; witness was out at the dance hall in the little room; heard some men talking outside and went out; Dillon, Casteel and Taylor were standing out there; witness took one drink and handed the bottle back to Taylor; Casteel made a grab for the whiskey and Taylor knocked it out of witness' hand; Casteel grabbed Taylor and pushed him back; Casteel backed up five or six steps and stated that he could whip all of them; Taylor broke off a stick and then picked up another one a little larger and hit Casteel in the head; then Taylor said: "Look out, he's got a knife" and started to run; Casteel ran after him around the house and out the lot gate; they were cursing each other; did not see Taylor any more that night; Taylor got over the gate with Casteel after him; Casteel was back in the cabin later, mumbling to himself, between ten and eleven o'clock; witness stayed until after one o'clock and the dance hall was still open; he was out the next morning, and Taylor's body was found; Casteel was drunk that night and Taylor had been drinking. Witness then pointed out on the map the public road, the river, the dance hall, the outhouse, the fence and the cabin; Taylor's body was found five or six steps off the path; he had on overalls and there was blood on his jumper and his overalls; Taylor hit Casteel with great force.

Dr. Lattimore testified about examining the body of Taylor and finding a knife wound which caused the death of Taylor. This witness then testified at length about the wound, and how long it would take one to die after the wound was inflicted, and how far he could run after being stabbed. It is unnecessary to set out this testimony, since there is no dispute about the knife wound having killed him.

Glen Jackson testified that he was out at Black River the night Taylor was killed, and that he got out there

after dark, about 7:30 o'clock and left the next morning about 4 or 5 o'clock. He testified to substantially the same facts as the other witnesses. He also testified about the card game, but he did not see the knife.

Red Ruff testified that he was deputy sheriff of that district of Clay county, and went out to the place where Taylor was killed on Sunday morning after he was killed on Saturday night; the body was on the ground. This witness testified about the clubs, and they were introduced in evidence. He also testified about the blood and where he found it, and that he found three dimes with blood on them about eight or nine o'clock in the morning, and the blood was still fresh.

Don James, witness for appellant, testified that he was at the dance hall the night Taylor was killed and that Casteel was drunk that night; saw Taylor going toward Casteel with the club and looked at Casteel and started out; Taylor hit Casteel with the stick; he said that Dillon and Kerley were not out there at the time; it was light enough to have seen them; he testified that it was pretty cloudy; that he was standing on the doorstep and that Edgar Bland was with him; that when Taylor hollered and ran, appellant did not overtake him; witness is 19 years old; testified that he had no education; has been going out to these camps for a year or two; was not out there the Saturday night before the killing; when Taylor picked up the club, Casteel fell into him; this happened around 11 or 12 o'clock; Taylor was gambling; witness heard the fighting outside and went out, but did not see Kerley; saw Taylor with a board in his hand; Taylor ran out of the gate.

Edgar Bland testified to substantially the same facts as last witness; he was eighteen years old.

Ira Shepherd testified that he operated the beer tavern; saw Casteel there and he was too drunk for witness to sell him beer; when asked if he did not have a row with Taylor, witness said Taylor pulled a knife on him; that Taylor had had a couple of fights in his place.

Johnnie Fields testified that he lived at Corning; knew Casteel and saw him the night Taylor was killed; Casteel was drunk.

Mr. Eason testified that Casteel lived with him and that when Casteel got home that night witness was in bed; he asked Casteel what time it was and Casteel struck a match and said it was five after ten; witness testified that he got up and looked at the clock and it was five after ten; he also testified that Casteel was drunk.

It appears from the evidence that both Taylor and the appellant were at the dance hall; that they engaged in a fight; Taylor hit appellant with a club of some kind, and appellant drew his knife, Taylor ran and appellant ran after him; Taylor's body was found next morning near the pathway where the two men had run. There is no evidence that there was any trouble between Taylor and anyone except appellant. The evidence conclusively shows that Taylor and appellant had trouble, and when Taylor saw that appellant had a knife he ran, and Casteel ran after him. Taylor was not seen any more that night by anyone, so far as the record shows, but a short time after they had run from the dance hall, appellant returned. The evidence shows that the fight occurred between ten and twelve o'clock.

The map introduced shows every place testified about by the witnesses. It shows the gate through which Taylor and appellant ran, and the pathway down which they ran. The evidence also shows that they were heard cursing each other after they had run out. So far as the record shows no one else went out that way. The fact that Casteel had a knife and was pursuing Taylor; that Taylor's body was found by the pathway with the knife wound which caused his death; that Taylor did not return to the dance hall and Casteel did, are all circumstances tending to show that Casteel killed Taylor. It is true no one saw them at the time the wound was inflicted, and that part of the evidence, of course, is circumstantial.

This court said in a recent case: ''The defendant was convicted on circumstantial evidence, but there is no difference in the effect between circumstantial evidence and direct evidence. In either case, it is a question for the jury to determine, and, if the jury believes from

the circumstances introduced in evidence, beyond a reasonable doubt, that the defendant is guilty, it is the duty of the jury to find him guilty just as it would be if the evidence was direct. There is no greater degree of certainty in proof required where the evidence is circumstantial than where it is direct, for in either case the jury must be convinced of the guilt of the defendant beyond a reasonable doubt. They are bound by their oaths to render a verdict upon all the evidence, and the law makes no distinction between direct evidence of a fact and evidence of circumstances from which the existence of the fact may be inferred." *Scott* v. *State,* 180 Ark. 408, 21 S. W. 2d 186; Nichols' Applied Evidence, vol. 2, § 4, p. 1065; Underhill's Criminal Evidence, pages 14 and 16.

This rule of evidence was approved in the case of *Spear* v. *State,* 184 Ark. 1047, 44 S. W. 2d 663, and in numerous other cases some of which are *Caradine* v. *State,* 189 Ark. 771, 75 S. W. 2d 671; *Pekin Wood Products Co.* v. *Mason,* 185 Ark. 166, 46 S. W. 2d 798.

The jury had the witnesses before them, heard them testify, had the map that was introduced in evidence, and all the facts and circumstances in evidence, and the jury is the sole and exclusive judge of the credibility of the witnesses and the weight to be given to their testimony.

"The jury are the judges of the credibility of the witnesses and the weight to be given to their testimony. Therefore, in determining whether the evidence is sufficient to support the verdict, this court must consider the evidence in the light most favorable to the state, and, when this is done, it cannot be said that the evidence did not warrant the jury in returning the verdict of guilty." *O'Neal* v. *State,* 179 Ark. 1153, 15 S. W. 2d 976; *Bowlin* v. *State,* 175 Ark. 1047, 1 S. W. 2d 546; *Yeager* v. *State,* 176 Ark. 725, 3 S. W. 2d 977.

There is no objection to the instructions of the court; in fact, the appellant states in his brief that the court correctly instructed the jury.

There was substantial evidence to support the verdict, and the judgment is affirmed.