40

## Thomas Wayne HURST v. STATE of Arkansas

5610                                    470 S.W. 2d 815

### Opinion delivered September 27, 1971

*Louis J. Longinotti, III,* for appellant.

*Ray Thornton,* Attorney General; *Garner L. Taylor, Jr.,* Asst. Atty. Gen., for appellee.

J. Fred Jones, Justice. Thomas Wayne Hurst was convicted of robbery at a jury trial in the Garland County Circuit Court and was sentenced to 10 years in the penitentiary. On appeal to this court he relies on the following points for reversal:

"The verdict was contrary to the law.

The verdict was contrary to the evidence.

The verdict was contrary to both the law and evidence.

The verdict and sentence were excessive."

The gist of appellant's argument under his first three points is that the state's evidence failed to sustain his conviction of robbery as defined by statute.

Ark. Stat. Ann. § 41-3601 (Repl. 1964) defines the crime of robbery as "the felonious and violent taking of any goods, money or other valuable thing from the person of another by force or intimidation; the manner of the force or the mode of intimidation is not material, further than it may show the intent of the offender." The appellant argues that the state simply failed to prove that he took anything from the alleged victim, Mr. Scurlock, *by force or intimidation.* We do not agree.

Mr. Scurlock was an 84 year old man who lived at a rooming house near the Broadway Lounge in Hot Springs. He had just been released from the Veterans Hospital in Little Rock where he had undergone a prostate operation, and had returned to Hot Springs on the day of the alleged crime.

On the evening in question Mr. Scurlock had gone to the Broadway Lounge (a pool hall where beer was sold) and was drinking beer and watching the pool games. According to Mr. Scurlock's testimony, he was drinking beer at a table in the pool hall when the appellant joined him. They engaged in conversation and continued to drink beer together during which time, according to the evidence, Scurlock, in addition to paying for the beer, also purchased sandwiches for himself and the appellant, and the appellant played three games of pool with a friend, Steve Kelly. From other testimony, as well as that of the appellant, Scurlock wagered $5.00 on each of the three games. Scurlock would bet Kelly $5.00 that the appellant would win the game. The appellant would purposely lose, "throw the game," and then he and Kelly would divide Kelly's winnings.

According to Mr. Scurlock, in the course of his conversation with the appellant while drinking beer, the conversation drifted to race horses, a subject in which Mr. Scurlock was interested. The appellant told Mr. Scurlock that he was a "stable boy" for some race horse owners from Missouri and was in charge of some horses they had in Hot Springs. He offered to take Mr. Scurlock out to see the horses and Mr. Scurlock accepted the invitation. Mr. Scurlock testified that he rode with the appellant out into the country and when they reached a lonely point on a road, the appellant stopped the car and stated to Mr. Scurlock, "this is where we get off." He testified that the appellant then grabbed him and threw him down into a ditch beside the road with such force that the breath was knocked out of him. Mr. Scurlock testified that the appellant then kicked him in the side and drove off leaving him in the ditch where he remained until discovered by a deputy sheriff who took him to a hospital. He says that he had a wallet containing approximately $60 in his pocket when he went riding with the appellant, and that on the way to the hospital he discovered that his wallet and the money were gone.

The appellant testified in his own defense and his testimony confirms that of Mr. Scurlock up to the point of their departure from the Broadway Lounge. The appellant testified that he is 22 years of age, and that during the course of his conversation with Mr. Scurlock, while drinking beer in the pool hall, they agreed to drive out into the country to a different tavern. He says that they purchased some beer at the other tavern and that they stopped beside the road and were just drinking the beer and talking. He then testified as follows:

". . . we set there and drink most of the beer and he was talking about how much money he'd lost on my pool games. And he took his wallet and held it out like that and said, 'If I gave you the money I've got in my wallet right now, you'd lose it all.' And I said, 'No, I wouldn't.' And he said, 'Yes, you would, there it is.' So I took it and stuck it in my shirt pocket and we set there and drank for awhile

more and he got to—anyway, he made me mad,
talking about how I shot pool and this and that, I
told him, I said, 'Well, just get out.' And whenever
he got out, why, I drove off and came back to the
Broadway Lounge, and picked up Steve Kelly. And I
wasn't there about, about 5 minutes, I ordered a
beer and Steve Kelly and I drove to the Track Drive-
in and ate a sandwich and then we drove back down
to the Past Time. When we got to the Past Time
Sheriff Brown was there and he asked me what my
name was and I told him and he told me that I was
under arrest.

\* \* \*

Q. What all did you have of Mr. Scurlock's?

A. Nothing but $17.00.

Q. What did you do with the wallet?

A. Threw it out the window.

The appellant argues that the state did not directly
prove any taking of Scurlock's money but relied solely
on circumstantial evidence which allows other reason-
able hypotheses explaining the missing money.

It is well established that circumstantial evidence
can sustain a conviction in Arkansas. *Mathis* v. *State,*
249 Ark. 1088, 464 S. W. 2d 48, (Feb. 22, 1971); *Cook* v.
*State,* 248 Ark. 332, 451 S. W. 2d 473; *Walker* v. *State,*
229 Ark. 685, 317 S. W. 2d 823; and that no greater de-
gree of proof is required where the evidence is circum-
stantial than where it is direct, for in either case the
jury must be convinced beyond a reasonable doubt. See
*Mathis* v. *State, supra; Casteel* v. *State,* 202 Ark. 663, 152
S. W. 2d 554; *Scott* v. *State,* 180 Ark. 408, 21 S. W. 2d
186 *Caradine* v. *State,* 189 Ark. 771, 75 S. W. 2d 671.

It is true that the general rule as to the sufficiency
of circumstantial evidence in Arkansas is stated in
*Ayers* v. *State,* 247 Ark. 174, 444 S. W. 2d 695, as follows:

"Where circumstantial evidence alone is relied upon to establish guilt of one charged with a crime, such evidence must exclude every other reasonable hypothesis but the guilt of the accused."

The state did not rely on circumstantial evidence *alone* in the case at bar, for there was direct testimony on every phase of the case except the manner in which the appellant obtained possession of Scurlock's wallet and money. Scurlock missed his wallet soon after his unusual encounter with the appellant and he advised the officers that he had been assaulted and robbed by the appellant. The appellant testified that Scurlock gave him the money. Viewing all the evidence in the light most favorable to the state, as we must (*Cook* v. *State, supra*), we are of the opinion that the circumstantial evidence in this case was sufficient to justify the jury in excluding every other reasonable hypothesis but the guilt of the appellant. The 22 year old appellant brazenly admits defrauding the 84 year old Scurlock out of money by purposely "throwing" pool games. He admits taking Scurlock out into the country; he admits obtaining Scurlock's wallet and money and then getting mad at Scurlock and abandoning him beside the road. And lastly, he admits disposing of Scurlock's wallet by throwing it from the window of his automobile.

The jury might well have considered that since Hurst admitted having Scurlock's money and wallet, the possible inferences that the money was lost or stolen by someone else was negated, and that the only possibilities left would be that the money was stolen by Hurst or it was given to him. They might well have concluded that the hypothesis that Scurlock gave Hurst his money, under the circumstances described by Hurst, was not reasonable in the light of all the evidence, particularly when Scurlock supposedly gave Hurst his wallet also, and Hurst threw the wallet from his automobile before returning to downtown Hot Springs. We are of the opinion that the jury verdict was sustained by the evidence.

As to appellant's fourth point, the penalty for the crime of robbery in Arkansas is fixed by statute at not less than three nor more than 21 years, Ark. Stat. Ann. § 41-3602 (Repl. 1964). The appellant argues that the sentence of 10 years was excessive. He recognizes our holding in *Hall* v. *State*, 113 Ark. 454, 168 S. W. 1122 where we said:

> "It was the peculiar province of the jury to weigh testimony of the witnesses, and this Court is not at liberty to reduce the punishment, even though we might think it too severe."

We also reached the same conclusion in *Osborne* v. *State*, 237 Ark. 5, 371 S. W. 2d 518, with the additional observation that the right to exercise clemency is vested *not in the courts but in the chief executive under Art. 6, § 18, of the Arkansas Constitution. The appellant recognizes our prior holdings on this point but points out that Act 333 of the 1971 legislature provides as follows:

> "A conviction shall be reversed and a new trial ordered where the Supreme Court finds that the conviction is contrary to the Constitution, the laws of Arkansas or for any reason determines that the appellant did not have a fair trial. Where appropriate, the Supreme Court shall reverse the conviction and order the appellant discharged. In all other cases, the conviction must be affirmed, *but the sentence of the appellant may be reduced if it is deemed excessive.*" (Emphasis added).

The appellant argues that this court now has the unquestioned authority to reduce a sentence of one convicted of crime, *if we deem such sentence excessive. We do not question the wording of the 1971 Act, as quoted by the appellant, but having concluded that the evidence is sufficient to sustain the judgment and finding no other error in the record, the extent of our authority under Act 333 is not before us. The authority of the Supreme Court of California under a very similar Act, was before that court in *People* v. *Odle*, 230 P. 2d 345,

and the question was resolved by that court contrary to the appellant's contentions in the case at bar.

The judgment is affirmed.