Timothy Paul DARVILLE *v.* STATE of Arkansas

CR 80-98                                            609 S.W. 2d 50

Supreme Court of Arkansas
Opinion delivered December 22, 1980

*E. Alvin Schay,* State Appellate Defender, by: *Deborah R. Sallings,* Deputy State Appellate Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *C. R. McNair, III,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. The sole issue on appeal is the sufficiency of the evidence to support appellant's conviction for manslaughter resulting in a 7 year sentence. The appellant argues that the evidence of his guilt is circumstantial in nature and insubstantial because it is impossible to determine whether the victim's death from a gunshot wound was the result of his reckless conduct or whether it was an accident. Ark. Stat. Ann. § 41-1504 (1) (c) (Repl. 1977) defines manslaughter in pertinent part:

> A person commits manslaughter if . . . he recklessly causes the death of another person.

Ark. Stat. Ann. § 41-203 (3) (Repl. 1977) defines recklessly:

> A person acts recklessly with respect to attendant circumstances or a result of his conduct when he consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

We have often stated the rules in regard to circumstantial evidence that where circumstantial evidence alone is relied upon, it must exclude every other reasonable hypothesis but the guilt of the accused. *Hurst* v. *State*, 251 Ark. 40, 470 S.W. 2d 815 (1971); *Ayers* v. *State*, 247 Ark. 174, 444 S.W. 2d 695 (1969). The question whether circumstantial evidence excludes every reasonable hypothesis other than the guilt of the accused is usually one for the jury. *Abbott* v. *State*, 256 Ark. 558, 508 S.W. 2d 733 (1974); *Smith* v. *State*, 264 Ark. 874, 575 S.W. 2d 677 (1979). The jury is permitted to draw any reasonable inference from circumstantial evidence to the same extent it can from direct evidence. It is only when circumstantial evidence leaves the jury solely to speculation and conjecture that it is insufficient as a matter of law and the test is whether there was substantial evidence to support the verdict when viewing the evidence in the light most favorable to the state. *Upton* v. *State*, 257 Ark. 424, 516 S.W. 2d 904 (1974); and *Abbott* v. *State, supra.*

Appellant and Gary Fuller, a friend, went to the home of the victim, who had a son by the appellant. Fuller testified that while he was talking to a woman on the phone, an argument broke out between the victim and the appellant; they began to "tussle" near a couch, "like a wrestling match;" he heard a sound like a blow from a fist; a gun was on the coffee table when they came in the house; appellant and the victim both were holding the gun while they were "tussling;" when he heard a shot, he turned around and saw the victim lying on the floor, the gun beside her; appellant became hysterical, running around the room; he dressed his infant son, wrapped the victim in a blanket, and with this witness' assistance, drove the victim to the hospital. The woman, who was talking on the phone with Fuller, testified that during their telephone conversation, she heard voices in the background and a woman's voice saying, "Don't hit me anymore", a man calling her foul names, the sound of glass breaking, and a baby crying. The victim died during surgery as a result of a "contact wound" from a gunshot; i.e., one that occurs when there is contact of the entire muzzle of the gun with the skin. Besides the fatal wound, there was a mild superficial contusion of the inner surface of the upper lip. The blood alcohol test was negative.

The state also introduced evidence that when appellant returned from the hospital to the scene with a detective, the gun was not there and was never found. On the way home, appellant remarked he hoped the gun had not been stolen during his absence, which appears to have been 1 to 2 hours. Once inside the locked house, appellant stated the television was also missing. The house was in disarray — broken glass scattered about and the arm of the couch was broken. The officers found a bullet hole in the couch and a pawn ticket for a television set dated a few days prior.

The appellant's version of the incident was that he went by the victim's house with Fuller to see the victim and their 17 month old son. He had loaned her a gun to protect herself; she had it out when they arrived; when he went into the bathroom, he warned her to put the gun away because "somebody's going to get hurt"; a few seconds later, as he was coming from the bathroom, he heard the gun discharge;

he saw the weapon on the floor; the victim was slumped on the couch, and she fell to the floor; the disarray of the room was a result of his panic in trying to get her to the hospital; he admitted that the previous day the victim had sworn out a warrant against him for stealing her car; however, she told him the night of the shooting she had withdrawn it. He denied there was any ill feeling between them and neither had he subjected her to any physical violence.

The evidence is not based alone on circumstantial evidence. In fact all of the evidence is of a direct nature except as to whether the fatal gunshot resulted from a struggle over the gun or, according to appellant's theory, the victim accidentally shot herself. Appellant went to the victim's home the day after she had sworn out a warrant for his arrest. There was testimony of a tussle, his calling her foul names, a blow being struck, her saying "don't hit me anymore", and a contusion being found on her inner lip. The house showed signs of a struggle. The gun was never found and appellant's theory, that it was stolen along with a television during his short absence from the scene, was discredited by an officer who found the pawn receipt for the television. Appellant's version and the state's version of the alleged offense were in conflict, which presented a fact issue for the jury to resolve. We are of the view that the jury could reasonably infer from the direct and circumstantial evidence, when viewed most favorably to the state, that the state's version of appellant's guilt sufficiently excluded any other reasonable hypothesis and is amply substantial.

Affirmed.

PURTLE, J., not participating.