MAPLES *v.* STATE.

4824          286 S. W. 2d 15

Opinion delivered January 9, 1956.

[Rehearing denied February 13, 1956.]

*Frederick A. Newth, Jr.,* for appellant.

*Tom Gentry,* Attorney General, and *Thorp Thomas,* Asst. Atty. General, for appellee.

MINOR W. MILLWEE, Associate Justice. Appellant, Marvin Maples, was charged with second degree murder in the killing of Hugh Craighead. Upon a trial be-

fore the court sitting as a jury, under Ark. Stats. Sec. 43-2108, appellant was found guilty of manslaughter and his punishment fixed at 3 years in the penitentiary.

The killing occurred at the home of appellant at 1005 Allis Street in Little Rock, Arkansas, about 7 p. m. on July 31, 1954. According to three of appellant's close neighbors, who testified for the State, the deceased drove in front of appellant's home, walked upon the porch and knocked on the front door. Appellant came out on the porch for a short period and then went back in the house. A somewhat lengthy and noisy argument took place. Deceased started to leave and then walked back and was opening the outside front screen door when he was shot in the right side of the head with a shotgun at close range and fell backwards on the porch with his feet near the threshold and the open screen door resting against his left leg. Deceased was unarmed and the State's eyewitnesses observed no overt act on his part to do bodily harm to appellant or other inmates of the residence.

Several photographs made immediately after the shooting were introduced by the State without objection. They show blood, brain tissue and other particles of flesh from deceased's skull and scalp on both the floor and ceiling of the porch and in the front yard. The major portion of deceased's brain was lying in the front yard about 15 feet from the body. According to one of the photographs and the testimony of the deputy coroner and police officers, no blood or human tissue appeared on the inside of the house nor was there any other evidence of a struggle there.

Appellant and his wife testified that deceased cursed and threatened to kill both of them when appellant went out on the porch; and that appellant jerked away from deceased, reentered the house and fastened the screen door. When appellant started to a back room to get his gun, deceased started choking and beating Mrs. Maples and had her head between his legs choking her when appellant returned with the loaded shotgun and shot deceased while the latter was standing about 2 or 3 feet inside the house still choking Mrs. Maples. Although they

testified that deceased was a stranger to them, appellant identified deceased as the step-father of Betty Jean Moore, a girl who lived with appellant seven or eight years. Appellant further stated that deceased told him he had come, "to get revenge for Betty Jean Moore." Neither the State nor appellant sought to further develop the nature of the relationship of the parties or the cause of the apparent bad feeling existing between them. While Mrs. Maples testified that deceased inflicted scratches and bruises on her face, she admitted that a photograph taken immediately after the killing failed to reveal such injuries.

The sole contention for reversal is that the judgment is not supported by any substantial evidence. It is argued that the undisputed evidence shows, as a matter of law, that the killing was justified on the ground of self defense and more particularly in the necessary defense of appellant's home under Ark. Stats. Sec. 41-2234. This statute provides: "A manifest attempt and endeavor, in a violent, riotous, or tumultuous manner, to enter the habitation of another, for the purpose of assaulting or offering personal violence to any person, dwelling or being therein, shall be a justification of homicide."

In reference to this statute in *Brown* v. *State,* 55 Ark. 593, 18 S. W. 1051, the court said: "Following the doctrine of the common law, the statute regards the violent attempt to enter the house as equivalent to an assault upon the person to be injured; and when it is obviously about to be made, he may at once put himself in an attitude to repel the aggressor. It was not practicable to give a rule applicable to all cases for determining what acts or conduct will constitute the actual attempt to enter a house. But it must be a "manifest" attempt; and we take this to mean one so plainly made that no reasonable doubt will exist as to the purpose of the aggressor. At what point the effort to enter the house has begun, and how far it may be permitted to proceed with safety to the life or person of the individual assailed, must be determined by the circumstances of each case. And these are questions more of fact than of law."

In commenting on the *Brown* case in the opinion in *Hall* v. *State,* 113 Ark. 454, 168 S. W. 1122, Judge HART, speaking for the court, said: "In the case of *Brown* v. *State, supra,* the court held that an attack upon a man's dwelling is regarded in law as equivalent to an assault upon his person, and that in order to justify a killing in defense of one's house, or of the inmates thereof, it is not necessary that there should be actual danger, provided the defendant acts upon a reasonable apprehension of danger. But the court further said that it is the duty of the householder to prevent the entry by means not fatal, if he can do so consistently with his own safety. So it may be said that if the defendant kills where there are no reasonable grounds of apprehension of danger it is manslaughter; and if the killing is done with malice, express or implied, it is murder. Even though the deceased is attempting at the time unlawfully to enter the defendant's dwelling house, if the killing is with malice and ill will, and not for self-protection or the protection of the house, it is murder. See *State* v. *Scheele,* 57 Conn. 307, 14 Am. St. Rep. 106. For, as it is there said, 'the law of self-defense, or the defense of one's domicile, does not require the giving to evil-minded persons an opportunity to take the life of another on such easy terms.' "

Under our settled rule the trial court, sitting as a jury, is the sole judge of the credibility of the witnesses, and in determining the sufficiency of the evidence to support a verdict or judgment of conviction on appeal, we view it in the light most favorable to the State. *Cook* v. *State,* 196 Ark. 1133, 121 S. W. 2d 87. Of course, if the trial court was bound to accept the testimony of appellant and his wife as true, the killing was in necessary defense of both person and habitation. On the other hand, if the court believed the testimony of appellant's neighbors, as corroborated by that of the officers and the physical facts so vividly portrayed by the photographs, then the evidence was substantial and sufficient to sustain a conviction for a higher degree of homicide than manslaughter. In cases involving similar conflicts in the evidence, we have held that the fact finders were fully warranted in finding that the killing or assault was done

with malice or ill will and not in defense of the defendant's person or place of residence. *Bealmear* v. *State,* 104 Ark. 616, 150 S. W. 129; *Davis* v. *State,* 206 Ark. 726, 177 S. W. 2d 190.

Affirmed.