Ledford *v.* State.

351 S. W. 2d 425

Opinion delivered November 27, 1961.

*W. W. Shepherd,* for appellant.

*Frank Holt,* Attorney General, by *Dennis W. Horton,* Asst. Attorney General, for appellee.

Paul Ward, Associate Justice. Appellants, Rex and Viola Ledford, were convicted and sentenced to one year in the State Penitentiary for the crime of arson. They were charged with wilfully, feloniously and maliciously setting fire to their own home located three miles east of Atkins on Highway No. 64. The Ledfords, who are grandparents, owned their home and also a small cafe building close (60 feet) by. Living with them were three children, including a married daughter. Appellants were convicted on circumstantial evidence. Appellants set forth six points upon which they rely for a reversal but they can all be included, and will be discussed, under the following groupings: One, no substantial evidence to support the jury's verdict. Two, they were deprived of the right to testify in their own behalf.

*One.* The fire, which damaged but did not destroy the house, apparently originated a short time before 6:30 p.m. on Saturday, January 14, 1961. The fire was first discovered at the time above mentioned, when it was beginning to grow dark. Testimony in behalf of appellants placed them in Little Rock at 6 p.m. visiting the sister of Mrs. Ledford. This sister testified that it was fifty-two miles from Little Rock to Morrilton and that it took sixty to ninety minutes to make the trip. We note that appellants' home is some ten miles beyond Morrilton from Little Rock. There was also other testimony by a witness, who lives at Morrilton, to the effect that she saw appellants in that city at a time which made it unlikely appellants could have set the fire to their home.

The state's theory of the case: The Ledfords made two attempts to burn down their house. The first fire was set by appellants in the dining room and kitchen area before they left for Mississippi on the previous Thursday. Contrary to their plan, this first fire died out after burning through one or more joists in the ceiling. When the Ledfords returned on Saturday afternoon they found that their first attempt to burn the house had failed. They then set a second fire in the bedroom area and left hurriedly for Little Rock, where they spent the night in the home of Mrs. Ledford's sister. The second fire was discovered and extinguished before it spread beyond the bedroom area.

In our opinion there is substantial evidence to support the above theory and consequently the jury's finding of guilt.

The fire in the bedroom area was discovered by two passers-by between six thirty and seven o'clock on Saturday evening. The fire department at Atkins, three miles away, was called and arrived in time to confine the damage to the one bedroom where the fire originated. There can be no doubt that both fires were of deliberate origin. Mr. Ledford admitted this, and circumstances are also convincing. There is no indication that the house was broken into; so the jury doubtless concluded that the

fires were set by some one who had a key to the house. As far as the record shows, no one except the Ledfords meets this requirement.

The house was examined on Saturday night, after the fire, by the Atkins fire chief, his assistant, and a state policeman with special training in such matters. They found that separate fires had been set in the dining room and the kitchen, and that the sheetrock had been removed to hasten combustion in each area. The first fire (in the kitchen) had burned a large hole in the ceiling, from which sheetrock was hanging down, and had burned through the ceiling joists. The state police officer explained that the first fire would have continued to burn except for the lack of oxygen in the closed house. When the fire in the dining room was discovered and extinguished the ashes from the fire in the kitchen were already white and completely cold. This fact, together with the fact that the house was locked when appellants left it on Thursday, strongly indicates the first fire was set before they left. In the attic the officers found a strip of wallpaper that had been laid so that it extended from a point above the kitchen to a point above the bedroom where the later fire took place. This strip of paper was burned at the kitchen end, but the fire had gone out before reaching the far end of the strip, indicating that whoever set the first fire had expected it to travel along the wallpaper to the bedroom area.

The circumstances were so suspicious that the Ledfords were questioned more than once. It developed that they had left by car for Mississippi on Thursday afternoon. The trip was not planned in advance and was not made for any pressing reason. The only excuse ever given for the journey was that Mrs. Ledford's daughter wanted to visit her husband, but the party stayed only two or three hours before driving on to Louisiana. The travellers got back to Atkins at some time on Saturday afternoon, between one and four o'clock. When first questioned Ledford denied that he visited the house that afternoon, but eventually it was admitted that both he

and Mrs. Ledford had gone to the house and spent from thirty minutes to two hours there. It cannot be doubted that during that visit the damage caused by the first fire was too obvious to be overlooked. There was a gaping hole in the ceiling; sheetrock was hanging down; ashes were on the floor. But Ledford told the officers that he and his wife stayed in the house for some time and "noticed nothing unusual." These facts and circumstances lead most convincingly to but one conclusion: that the Ledfords ignited the second fire during that visit to the house.

Upon leaving the premises on Saturday afternoon the Ledfords arranged for their children to spend the night with Mrs. Ledford's aunt. The plan was devised so hurriedly that the children were not supplied with sleeping garments. Mr. and Mrs. Ledford then drove to Little Rock and spent the night with Mrs. Ledford's sister. There is no explanation for this trip; indeed, the sister testified that she did not know that the Ledfords were coming. Whether the Ledfords were in Little Rock at six o'clock is a disputed question of fact, upon which they are supported only by the testimony of Mrs. Ledford's sister. Another of the defense witnesses said that the Ledfords were in Morrilton between five and six o'clock.

There were other circumstances to support the view that the Ledfords had planned the fires. The closets appeared to have been stripped of clothing. There were many coat hangers in each closet, but only two or three garments. When Ledford was first questioned about this he insisted that he owned only one suit and an extra pair of pants, but it was later found that many boxes and suitcases containing clothing had been placed in a storeroom behind the house. Ledford originally denied ownership of this clothing, but eventually he admitted that part of it belonged to his family. The family television set had also been removed from the house. There was also evidence indicating the house and its contents were greatly overinsured.

Appellants offered no testimony to explain away many of the above incriminating facts and circumstances which, we think, constitute substantial evidence to support the jury's verdict. The jury, of course, must be convinced of guilt beyond a reasonable doubt, and its verdict cannot stand if it rests solely upon speculation and conjecture. However, as stated in *Dowell* v. *State,* 191 Ark. 311, 86 S. W. 2d 23, ". . . circumstantial testimony is legal and proper, and, when properly connected, furnishes a substantial basis and support for a jury's verdict." Moreover, as was said in *Morgan* v. *State,* 189 Ark. 981, 76 S. W. 2d 79, "In testing the sufficiency of the evidence to support the verdict, we must view the evidence for the State in the light most favorable to it. . . ."

*Two.* Appellants do not argue the point, but they ask for a reversal because they say they were denied the right to testify in their own behalf. This point was raised in a Motion for a New Trial, supported by appellants' affidavits. The trial court denied the motion, and we think he was justified in doing so. The substance of appellants' affidavits is that they asked their attorney to let them testify but he would not let them, with the attorney giving as his reason that they would "just mess up the trial and cause more damage." Appellants admit that the matter was not called to the attention of the Court.

We feel that it would be mere speculation for us to judge the wisdom of the trial attorney in taking the position he did. Appellants are mature people and they were free and qualified to select an attorney of their choice. A similar situation was presented to us in the case of *Jones* v. *State,* 224 Ark. 134, 273 S. W. 2d 534, where it said:

"We can see no possible error based on the fact that appellant was not placed on the witness stand by his counsel. It is not contended that any request was made to the court by either appellant or his attorney for appel-

lant to testify . . . we cannot say that it was not for his best interest to refuse to take the stand and refuse to submit himself to cross-examination."

The court in this same case went further and said:

"Here, it must be rememberd, appellant is a mature man and should bear some responsibility for selecting an attorney of his own choice."

It is our conclusion therefore, based on what we have heretofore said, that the judgment of the trial court should be, and it is hereby, affirmed.

Affirmed.