ANNIAH BUSH *v.* STATE OF ARKANSAS

5573                                   464 S. W. 2d 792

Opinion delivered March 22, 1971

*Leonard C. Smead,* for appellant.

*Ray Thornton,* Attorney General; *Milton R. Lueken,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Anniah Bush contends that we should reverse his conviction of murder in the first degree in the perpetration of arson solely on the ground that the state did not prove his guilt beyond a reasonable doubt and to a moral certainty. He is mistaken as to the purpose and scope of appellate review of a criminal judgment. The point asserted here by appellant was resolved by the jury verdict, if it has substantial evidentiary support. *Pharr* v. *State,* 246 Ark. 424, 438 S. W. 2d 461. It does. The facts hereinafter recited state the evidence tending to sustain the conviction in the light in which we must view it—that most favorable to the state. *Cook* v. *State,* 248 Ark. 332, 451 S. W. 2d 473.

Bush, a male, lived with Perry Lee Holliway, a female, in a 3-room house in Hampton. One of her children, also an occupant of the house, was burned to death when their dwelling was consumed by flames during the early morning hours of February 8, 1970. Bush was tried upon a charge of murdering one Jessie L. Brown, who was sleeping in the house when it burned.

On Saturday night February 7, Anniah (alias Annine and Annias) Bush and his paramour went first to the home of a neighbor, Ruthie Mae Newton, where they drank some beer and whiskey. They left about 9:30 p.m.

and went to Jack Harris' place where they enjoyed drinking more intoxicants of some nature. They were taken to their home somewhere between 10:30 and 11:00 p.m. by the Holliway woman's stepmother. They immediately went to bed together in the front or center room, had intercourse and went to sleep. Not long thereafter Perry Lee Holliway's son, Leotis Galbert, a cousin whose name she could not remember, and Jessie Brown came in. Their banter awakened her, but apparently did not disturb appellant. The son and cousin went to bed in a back room. Perry Lee dozed off, but awakened to find Jessie Brown in bed with her and Bush. She then had intercourse with Brown, after which both went to sleep. Bush did not awaken until she bumped him in getting out of bed because of an asthma attack she was suffering.

When Bush saw Brown in the bed, he first asked, "What is that s__ o__ b__ doing in here?" drew an old unloaded pistol from a case under the bed and struck Brown a blow across the head sufficient to cause bleeding. According to the Holliway woman, Brown raised up when struck, then turned over, turned his face to the wall, and said nothing. Bush, she said, threw his weapon to the floor. She heard him say he would burn the s__ o__ b__ down, but never heard Bush say anything to Brown after his question. She then saw Bush get a plastic bottle and sprinkle gasoline about the floor in the room where they had been sleeping. At this time, the two were preparing to go to a neighboring unoccupied house to get water to alleviate the effects of her asthma attack. She went outside the house, from whence she tried to rush Bush. She said that he told her to shut up or he would kill her. She went back into the house to see what was detaining him. He advised that he was having trouble getting his shoes on his swollen feet. Before leaving the first time, she had put a "splinter" of wood from a woodpile in the room into the "tin heater" in the same room to keep the fire in it burning.

After a time, Bush came out, they walked to the vacant house, filled some cans they had brought with

water, and had a brief argument, after which, according to her, Bush threw her down and they engaged in intercourse. View of their house from this vacant building was almost completely obstructed by a high hedge. After about 10 minutes, but before consummation of coition, they saw flames at their home and jumped up and ran to the front of the house. The fire was then so widespread and intense that she was unable to remain close to the house even long enough to pull a screen from it in efforts to rescue her son, whose calls for help she heard as soon as she returned to the burning house.

City Marshal Cottrell heard the fire alarm at 4:00 a.m. and went to the scene. While the fire was still blazing high, he asked Bush what had happened. According to the marshal, Bush speculated that old electrical wiring had caught fire, because there had been trouble with a socket in the kitchen. He advised the officer that Jessie Brown, Leotis Galbert and Veotis Cross were in the house. The marshal testified that Bush said that when he left to get a bucket of water, Brown, while sitting on the side of the bed, asked him where he was going. Later, said the officer, Bush told him that Brown was lying on the bed asleep and just rolled over and grunted as Bush and Perry Lee Holliway departed on their mission to obtain water. Cottrell and another officer found a pistol in the ruins within a foot of the bed in the front room. They also found three bodies there. Bush testified that he did not know where the pistol was kept, and that he had thrown it into the yard at some time. Sergeant Peroni testified that Bush had told him the pistol was kept in a box under his bed.

Ruthie May Newton, the neighbor, whom Bush and the Holliway woman had visited recalled being awakened at 4:00 a.m. by Perry Lee Holliway's screams as the latter approached the burning house, followed by Bush carrying two cans of water. Mrs. Newton's husband asked appellant whether anyone was in the house, but got no reply until he repeated his in-

quiry. Bush then said that Streamline (Jessie Brown), "mother's boy" and another boy were in there. She saw Bush standing in the road in front of her house between his two cans of water, while attempts at rescue of those in the burning building were underway, but did not see him do anything to assist. She saw sparks from the electrical wires at the front of the house after her attention was directed to the fire.

Charles Taylor assisted in rescue efforts. He found the front door of the burning house open when he arrived. He could see the wood stove, but saw no fire in it. The fire was behind the stove in the corner next to the kitchen. The wall between the kitchen and the front room was burning. He saw electric wires flashing at the front of the house. He did not get close enough to smell gasoline. He judged that the fire came from the kitchen, because it was coming across the back of the front room. Doris Jean Galbert, the daughter of Perry Lee Holliway, saw gasoline in a plastic bottle beside the gas stove in the kitchen in her mother's house on February 7.

Anniah Bush denied any knowledge of the presence of anyone in the house except him and his paramour until she awakened him in getting out of bed because of her asthma attack. He then became aware of the presence of Jessie Brown, but claimed to have said nothing either to him or to the woman with whom he had gone to bed. He also denied having a pistol or striking Brown. He claims not to have been disturbed that another man was in bed with, and had intercourse with, the woman with whom he was living. He said that there was a fire in the stove and pine wood stacked all around the stove when the two of them went to the neighboring house for water. He generally corroborated the Holliway testimony about their activities thereafter except that he claimed to have made an attempt to enter the burning house. He denied setting the fire, making any threats to do so, or having any knowledge of the presence of gasoline inside the house. He admitted that he kept gasoline in a plastic milk jug

on a bench outside for the purpose of starting fires in the heater. No one saw appellant ignite the gasoline, nor did any who arrived at the scene after the fire started smell any gasoline.

Arson, like any other crime, may be proved by circumstantial evidence. *Carpenter* v. *State,* 204 Ark. 752, 164 S. W. 2d 993. When properly connected, it furnishes a substantial basis for a guilty verdict. *Ledford* v. *State,* 234 Ark. 226, 351 S. W. 2d 425. We find that it is sufficiently connected. Appellant's principal argument is that the evidence is not sufficient because, since no one saw Bush ignite the fire, it is just as plausible to believe that any one of the sleeping occupants left in the house might have lighted it, that a spark from the stove might have started it, or defective wiring might have caused it.. It is true that the burden was on the state to prove that the burning of the building was the result of the wilful act of the accused. *Carpenter* v. *State,* supra. It is also true that we will reverse a conviction based upon circumstantial evidence alone, when the jury is left to speculation and conjecture to exclude every reasonable hypothesis other than the guilt of the accused. *Jones* v. *State,* 246 Ark. 1057, 441 S. W. 2d 458.

If the jury believed the testimony above set out, there was adequate evidence to show motive, threats, overt acts to carry out the threats, inadequate explanations of suspicious circumstances tending to show guilt, and unlikelihood of other possible causes of the conflagration, which serves to connect the circumstances and exclude any other reasonable hypothesis than the appellant's guilt. See *Carpenter* v. *State,* supra; *Ledford* v. *State,* supra.

The judgment is affirmed.