JERRY BOYETTE *v.* STATE OF ARKANSAS

CR 73-18.                    493 S.W. 2d 428

Opinion delivered April 30, 1973

*Louis W. Rosteck,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Deputy Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Jerry Boyette, was tried by the Pulaski Circuit Court (Fourth

Division), sitting as a jury, on a charge of possessing stolen property, two air conditioners, was found guilty, and sentenced to five (5) years imprisonment in the Arkansas Department of Correction. From the judgment so entered, appellant brings this appeal. For reversal, three (3) points are asserted which we proceed to discuss, though not as separate points since they are closely related.

It is contended. that the. State failed to prove. that appellant was in possession of alleged stolen goods. Ed Presley, a Pulaski County Deputy Sheriff, arrested Boyette on May 22, 1972, in the salvage yard of the Southwest Auction Company in Little Rock. This company was owned by Dick Emerson. Presley and another officer had driven by this location after receiving a tip, and they observed appellant unloading, from a U-Haul truck, three (3) cartons. They turned around, went back to the salvage yard, stopped, and observed Boyette in the back end of the truck, which contained about fifteen (15) more cartons, later proved to contain air conditioners. Emerson was present in the building but the officers did not see him do any unloading. They learned that a number of air conditioners belonging to Oklahoma Tire and Supply Company were missing from the company warehouse, and Detective Keith Rounsavall subsequently opened all the cartons and testified that they contained air conditioners. A rental contract bearing Boyette's name was found in the glove compartment of the truck, this contract reflecting that the truck had been rented on May 21, 1972, at 11:00 A.M., and was to be returned on May 22 (date of the arrest).

Charles Perkey, Assistant Manager of Oklahoma Tire and Supply Company, testified that sixty-three (63) air conditioners were missing from the company warehouse in Little Rock. The sheriff's office had taken several pictures of air conditioners, including close-ups of two (2) of the cartons found in the truck, these cartons containing air conditioners, and bearing the stock number, the model number, and serial numbers. The witness said that the stock at the warehouse had not been checked since March 14. Perkey did not actually see the air conditioners themselves, only the cartons, but he testified that the manufacturer places the serial num-

ber on the outside of the box as well as on the air conditioner itself. He said that the two (2) air conditioners constituting Exhibits 8 and 9 were of the value of $273.05.

At the conclusion of the State's case, counsel for appellant moved that the case be dismissed on the basis that the witnesses only saw some cartons which purportedly contained air conditioners; the motion was denied. In making this motion, it would appear that the testimony of Rounsavall was overlooked.[1]

Boyette testified that he had been acquainted with Emerson for several years, the latter operating a second-hand store, and holding an auction every other Friday night. Appellant stated that on the 21st of May, Emerson asked if he (Boyette) knew where Emerson could "get some televisions" and Boyette told him that he did not. Further, Boyette testified:

> "I told him I was going to Old Mexico, that I'd been down there and bought some pictures and stuff and then he wanted to know if I was going in my truck or what I was going to do. I told him I was going to rent a truck. He said, well he needed a used truck and that if I'd go with him that he'd pay part on a truck if I'd rent it and let him use it, so I did."

The U-Haul truck was then rented. Still further, from the record:

> "Well, I let him use the truck that day. He was going to move some stuff from the auction or something he'd bought or something, I don't know just what, he's going to move something, so I let him use the truck, and the next morning when I go to pick up the truck, he told me that he had some stuff on there and we had to unload it. *** Well, I takened the truck and go on over to his place of business and I sat over there and waited and waited and waited till he, he

[1]Appellant, in his brief, also states that the "possession" (by Boyette) is not based on the cartons which the deputy sheriff observed Boyette unloading, but two (2) of the cartons that were in the back end of the truck. No objection of this nature was made during the trial; for that matter, when observed by the officers, Boyette appeared in possession, and engaged in the continuous unloading of all merchandise in the truck.

was a long time about getting there and I kept waiting, so I started to go back to his house to see what was the matter. About that time he come up over there and he wanted to know if I knew anybody that I could get to help unload them things. And I told him I did not."

Boyette testified that he unloaded two (2) of the boxes which he assumed contained air conditioners, and that Emerson had also unloaded one (1) before the arrest was made. When asked by his attorney if he knew the merchandise had been stolen, Boyette responded:

"Well, from the way he was acting, I, I had it figured, but I didn't say nothing. I mean, he never did say nothing about it was stolen. I didn't ask him where he got it."[2]

It is argued that under the proof, Boyette was not guilty of possession. In his brief, appellant states:

"The question is—does the fact that the defendant was seen unloading some cardboard boxes and was inside the truck, constitute possession? It is candidly admitted that without some valid explanation, it might be. But, the defendant plausibly explained that he had let Dick Emerson use the rented truck the day before, and that he was not aware that the truck was loaded with anything until Dick Emerson told him the next day. He then took the truck to Dick Emerson's place of business and waited until Emerson arrived, and both started unloading the truck. There is nothing to dispute the defendant's testimony."

That Boyette actually had possession of the stolen merchandise, of course, cannot be denied since, as stated by appellant, he was unloading cartons when first

---

[2]Subsequently, on cross-examination, the record reveals the following:

"Q Well, you testified a minute ago that you had a pretty good idea that the stuff was hot. Why did you think it was hot?

A Because he was coming back wanting the truck, wanting to go on to Texas. He said something about me taking the truck with that stuff on it to Texas and I told him I would not."

observed by the officers, and was in the back end of the truck apparently preparatory to continuing the unloading when arrested. It is, of course, axiomatic that the court was not required to accept or believe appellant's explanation. Whether he was telling the truth was a fact question to be determined by the circuit court, sitting as a jury. There were, however, additional facts which conflict with the contention of innocence. Boyette testified "I had it figured," meaning that he thought the property was stolen, and he mentioned that Emerson had wanted him to take the truck "with that stuff on it" to Texas. There is another fact, however, that is even more incriminating and indicates that his contention of innocence could not be taken at face value. It has earlier been mentioned that a rental contract had been found in the glove compartment of the truck, this contract reflecting that the truck had been rented on May 21 at eleven o'clock a.m. and was to be returned the next day at eleven o'clock.[3] Boyette admitted that he had entered into the contract and admitted signing it. Let it be remembered that he also testified that this U-Haul truck had been rented for the purpose of going to Old Mexico, where he intended to pick up some pictures and "stuff" that had been previously purchased. Yet, according to his testimony, because Emerson put up a $25.00 deposit, Boyette postponed his trip in order that Emerson could use the truck overnight. Of course, it would be impossible for one to drive from Little Rock to the nearest point in Old Mexico on May 22 and return by 11:00 P.M., and, for that matter, it would be well nigh impossible to make the same trip had he started at 11:00 A.M. on the 21st.

In the case of *Daniels* v. *State,* 168 Ark. 1082, this court said:

"The rule has long been maintained by this court that unexplained possession of property recently stolen constitutes legally sufficient evidence to warrant a conviction, either of larceny or receiving stolen property. *Sons* v. *State,* 116 Ark. 357; *Mays* v. *State,* 163 Ark. 232. The weight to be given to the testimony and the inference to be drawn therefrom are questions

[3]It cannot be determined from the carbon copy of the contract in the record whether the return was to be at 11:00 A.M. or 11:00 P.M.

for the jury. It was a matter for the jury to determine the reasonableness and sufficiency of the explanation given by the accused of his possession of the stolen property."

Appellant, in his brief, frequently mentions that Emerson was not arrested, but we are here only concerned with the guilt or innocence of Boyette. On cross-examination, counsel for appellant only asked Officer Rounsavall if Emerson was arrested and when the reply was in the negative, the matter was not pursued further. In cross-examining Presley, several questions were asked[4], but here again, upon asking if Emerson had been arrested and receiving a reply in the negative, the matter was not pursued further, i.e., no questions relative to why he was not arrested, why he was not subpoenaed, etc. were asked.

The circuit court, sitting as a jury, heard all of the evidence and it was the court's function to weigh these facts and render its decision. We think and hold that there was substantial evidence to support the verdict.

Affirmed.

---

[4]From the record:

"Q Did you question him about it? Mr. Emerson?
A We asked him who he was buying it from.
Q Well, I ask you did he admit unloading any?
A No.
Q Huh?
A No, sir.
Q Did you ask Mr. Emerson who he was buying it from?
A Right.
Q In other words, he was involved in stolen merchandise? Is that what you're saying?
A He hadn't bought anything, as far as I know. I don't know—
Q (Interposing) Has Mr. Emerson been arrested?
A No, sir."