Harold S. UPTON *v.* STATE of Arkansas

CR 74-97                          516 S.W. 2d 904

Opinion delivered December 23, 1974

425

*Richard H. Mays* and *Michael Landers,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Jack T. Lassiter,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. This appeal comes from a retrial of appellant Upton on a charge of first degree murder of Woodrow DeFee alleged to have been committed in the perpetration of a robbery, after our reversal of his conviction in *Upton* v. *State,* 254 Ark. 664, 497 S.W. 2d 696. The points for reversal here are:

I. The Trial Court erred in refusing to grant defendant's motion to quash and dismiss relative to the appointment of a special prosecutor.

II. The Trial Court erred in refusing to grant defendant's motion to suppress evidence regarding a confession allegedly made by defendant.

III. The evidence was not sufficient to sustain a judgment of murder committed while in the act of or in the attempt to perpetrate robbery.

The second point was asserted on the previous appeal and we held adversely to the appellant. Unless the evidence is materially different from that previously before us, the law of the case governs. *Mode* v. *State,* 234 Ark. 46, 350 S.W. 2d 675. There is very little difference in the evidence on behalf of the state. We find there is no reversible error. We will treat these points separately.

I

Appellant, as one ground for a change of venue, sought a transfer of the case to a county in which James J. Calloway was not a deputy prosecuting attorney. He asserted that his right to a fair and impartial trial was jeopardized by reason of the fact that Calloway, who had previously been one of the attorneys appointed to represent him in the defense of this charge, had been appointed Deputy Prosecuting Attorney in and for Union county. The motion for change of venue was granted, without any indication that it was based only on this ground. Appellant had also filed a motion to quash and dismiss the information filed against him on the same ground. He asked, in the alternative, that the prosecuting attorney and his staff be disqualified and that the court appoint a special prosecutor and enjoin him from discussing the case with the prosecuting attorney or members of his staff and from using any evidence except such as might be on public record or was used in the first trial. The motion was denied upon the trial court's finding that Calloway had respected the confidential relationship with his former client. The court, however, stated that if at any time prior to trial it was shown Calloway had violated or appeared to have violated this confidentiality by revealing any information received from appellant, the court would consider a motion to recuse the prosecuting attorney and his staff or to permit appellant to

renew his motion to quash. The court also enjoined Calloway from discussing the case with the prosecuting attorney, his staff, appellant or appellant's attorneys and from appearing at any subsequent hearings in the case or at the trial or participating in the cause, either as an advocate or spectator. The circuit judge warned that any appearance by Calloway in the courtroom at any time this case was under consideration would constitute a violation of the court's order and any violation would immediately result in the prosecuting attorney and his staff being recused and a special prosecutor appointed.

The record discloses that Calloway was appointed to assist in Upton's defense on April 4, 1972, and had conferred with Upton about the charges and his defenses on numerous occasions and had participated in the former trial and appeal. Calloway testified that his principal area of activity was in legal research and briefing and that Denver Thornton was leading counsel throughout the trial and appeal. His appointment as deputy prosecuting attorney was made on March 5, 1973, after he had completed his research in the Upton appeal but before he had dictated his brief. He stated that he had not subsequently had any contact with Upton, had never reviewed the state's file in the case against Upton, except when it was made available to him as defense counsel, had not related any confidential information received from Upton to any of the prosecuting attorney's staff, and had not done anything or become involved in any way in the case against Upton. He did say that after the reversal of Upton's first conviction he had received a note from Upton and had gone to the jail to talk to Upton, at which time he gave Upton to understand that the representation was terminated. Calloway stated that he had done everything within his power to stay away from the case.

Calloway related that his primary duties as deputy prosecuting attorney were to attend municipal court, but said that he had made some felony court appearances and had handled a great deal of office traffic and some special assignments. There is no evidence contrary to that of Calloway and no indication that Calloway violated the confidence of appellant or participated in the case on behalf of

the state in any way, or that appellant was prejudiced by anything Calloway had said or done. There is not the slightest indication that Calloway violated the trial court's injunction in any way.

Appellant's whole argument is based upon the potential for prejudicial violation of the confidential relationship. In support of his argument appellant relies upon numerous authorities from sister states, none of which is in point. If Calloway had appeared in the case at any time on behalf of the state in any capacity or prepared, presented or argued charges against appellant or instructions to be given the jury, or had communicated with the prosecuting attorney or any member of his staff about the case or had been a partner of the defense counsel serving at the second trial, we would have an entirely different situation. It appears from this record that Calloway scrupulously avoided any possibility of violation of any confidence and that the circuit judge was just as scrupulous in taking steps to avoid even the possibility of impairment of appellant's right to a fair trial insofar as Calloway's previous representation of him was concerned. To say the least, there was no abuse of the trial court's discretion under these circumstances.

## II

The alleged confession attacked by appellant is the same we held to be voluntary upon the record before us on the prior appeal. The trial court, after another Denno hearing before the second trial, also held the statement was voluntary and it was admissible both on that ground and on the law of the case. Appellant has not pointed out to us any significant difference in the testimony at the two Denno hearings. The impact of the law of the case is as great on questions of admissibility of evidence and voluntariness of statements by an accused as on any other question. See *Fuller* v. *State*, 246 Ark. 704, 439 S.W. 2d 801; *Mode* v. *State*, 234 Ark. 46, 350 S.W. 2d 675.

Appellant's argument on this point is based entirely upon the fact that there was a two-day interval between the warnings as to his constitutional rights and the statement

made by him to the prosecuting attorney. He says that the statement should have been held inadmissible because of the failure of the prosecuting attorney and the officers accompanying him to Upton's jail cell on the occasion the statement was made to advise him of his constitutional rights. Even if this is an objection to admissibility not previously made, the law of the case, as the rule is applied by this court, probably would govern on the question of admissibility. See *St. Louis Southwestern Railway Co.* v. *Jackson*, 246 Ark. 268, 423 S.W. 2d 41; *Turner* v. *State*, 251 Ark. 499, 473 S.W. 2d 904. Still, we find no merit in appellant's argument on this appeal.

The statement was made at an interview requested by appellant. The statement did not result from any interrogation. It was spontaneous. Upton started giving his version of the case as soon as the prosecuting attorney and the accompanying officers entered the cell. We have never attempted to set a fixed limit on the interval of time which must elapse between advice to an accused of his constitutional rights and an incriminating statement before a new warning is essential to admissibility of the statement. Probably we never will, because we must view the totality of the circumstances in our independent review of the record to determine whether such a statement is voluntarily made. See *Degler* v. *State*, 257 Ark. 388, 517 S.W. 2d 515 (1975). We have held that a three-month interval is too long. *Scott* v. *State*, 251 Ark. 918, 475 S.W. 2d 699. On the other hand, we held that a three-hour delay between warning and confession was not so long as to require repetition of a warning where other evidence that the confession was voluntary preponderated. *Summerville* v. *State*, 253 Ark. 16, 484 S.W. 2d 85. In a factual situation very analogous to this, we found the evidence that a statement was voluntary to be overwhelming in spite of the fact that at least three or four days intervened between the accused's being informed of his constitutional rights and his relating his version of a killing to officers he asked to come to the jail where he was incarcerated. *O'Neal* v. *State*, 253 Ark. 574, 487 S.W. 2d 618. To say the very least, we cannot say that when we view the totality of the circumstances the trial judge's finding in this case was clearly against the preponderance of the evidence. See *Degler* v. *State*, supra.

## III

On the prior appeal we found no merit in any of appellant's arguments for reversal other than the one upon which we reversed his conviction. While he did not specifically argue in that appeal that the evidence was insufficient to sustain a verdict finding him guilty of committing a murder in the perpetration of a robbery, he did raise a point closely related to his present argument. The point he did assert was that the court erred in failing to instruct the jury that he could not be convicted of murder in the perpetration of robbery if he did not perpetrate, or attempt to perpetrate, a robbery on the deceased or if the intention to rob the deceased was formed subsequent to the infliction of the mortal wound. Now he argues that the evidence fails to show that he perpetrated or attempted to perpetrate a robbery. In so arguing appellant says the evidence that the victim, Woodrow DeFee, was robbed is purely circumstantial and that the preponderance is to the contrary. Of course, we are not concerned with the preponderance of the evidence. Basically, it is sufficient if it does more than give rise to a suspicion that the victim was robbed and does not leave the jury to speculation and conjecture only in determining whether other reasonable hypotheses are excluded. *Jones* v. *State,* 246 Ark. 1057, 441 S.W. 2d 458; *Ledford* v. *State,* 234 Ark. 226, 351 S.W. 2d 425. See also *Ayers* v. *State,* 247 Ark. 174, 444 S.W. 2d 695; *Taylor* v. *State,* 178 Ark. 1200, 10 S.W. 2d 853.

True enough, his confession, which was admitted, left nothing to speculation. As related by the Chief Criminal Deputy Sheriff of Union county, Upton said he picked DeFee up just out of Strong en route to El Dorado and this "dude" had a check stub he was flashing, and was bragging about how much money he had made, so Upton made up his mind that he would rob DeFee, but was talked out of it by his female companion. According to this officer, Upton also said that, after stopping in El Dorado, when the "dude" asked to be taken back to some point they had passed, Upton stuck a gun in his ribs, and later pulled off the road, made DeFee give up his billfold and told him to get out of the car. The officer also said that Upton stated that after having shot DeFee twice, he took $20 out of the billfold after which he threw it away.

Of course, it was necessary that the state show by other evidence that the particular crime with which Upton was charged had been committed. Ark. Stat. Ann. § 43-2115 (Repl. 1964). In a very similar case, we held that the fact that the victim was missing for five days, that his body was found far from the route he normally would have followed in returning home and that his purse had been taken would have constituted sufficient evidence that he had been robbed and had not died from natural causes. *Moore* v. *State,* 227 Ark. 544, 299 S.W. 2d 838. Appellant's attack is, of course, directed toward the evidence of robbery and not the cause of DeFee's death.

Alton Vestal saw DeFee about 4:00 a.m. on the day of the homicide. He saw a check for about $400 in DeFee's possession. Vestal cashed a smaller check, for an amount less than $50, deducting $5.50 DeFee owed Vestal and giving DeFee between $35 and $40. Opal Lemmons sold DeFee a half pint of whiskey on that morning. He paid for it with two one dollar bills which he took from his shirt pocket and showed her his payroll check for more than $400, which he removed from his billfold. Marie Jerry testified that DeFee was in her place of business from 9:00 or 10:00 a.m. until noon on that day when his wife came and took him home. He paid cash for beer he bought. She remembered that he had a check in his possession and that DeFee returned about 2:00 or 3:00 p.m. and his attire was different from what he had worn in the morning.

Francine Chadwick also saw DeFee at this place during the morning. She said that DeFee purchased one can of beer while there, took out his billfold and handed Marie Jerry a check and a piece of currency, the denomination of which she did not know, but she saw a $20 bill which remained in his billfold.

Shirley DeFee said she had talked to her husband about his paycheck when they got home, and he gave it to her. She tried to get his billfold from him, but he refused to give it to her. She thought if she could get it he would stay at home. She related that she unsuccessfully tried to get hold of it while it was in his pants pocket and that they had a tug of war

which she lost. She testified that he went to sleep wearing his work clothes and she left without any further effort to get the billfold, knowing that he was intoxicated and had been without sleep for 36 hours. She said that, thinking her purpose had been accomplished, she took his check, cashed it, paid some bills, returned home and, finding her husband still asleep, went to her mother's. She stated that when she returned, he had changed clothing and left.

Later Hazel Hollis saw DeFee at Jerry's Drive-Inn where he bought beer and paid for it with change. She did not see a billfold.

There was testimony that there was no billfold or other means of identifying DeFee found on his body but that there were three one dollar bills, nine quarters, four dimes and five pennies found. The body was found at a place off Highway 82 about five miles west of El Dorado. The billfold was never found, although the officers searched for it.

Appellant argues that the evidence pertaining to intention to rob DeFee is insufficient, because no one saw DeFee with a billfold after he left home, and it is probable that Mrs. DeFee took the billfold after he went to sleep and her statement that she did not was unlikely, so that it should be inferred that DeFee had less than $30 in his possession when he was last seen, that it would have been a perfectly simple matter for one intent upon robbery to reach into DeFee's pockets after he was on the ground on his back, as he was found, and take the $5.70 found after the body was discovered.

These arguments were appropriate if addressed to the jury, and they undoubtedly were. It is true that the evidence pertaining to perpetration of a robbery, which was independent of Upton's confession, was purely circumstantial. Since Mrs. DeFee's testimony is not inherently improbable so that it must be rejected as a matter of law, and since her credibility and the weight to be given her testimony was for the jury to decide, it had the right to believe her. *Tyler* v. *State,* 168 Ark. 1168, 271 S.W. 451; *Butler* v. *State,* 192 Ark. 802, 95 S.W. 2d 636; *Melton* v. *State,* 165 Ark. 448, 264 S.W. 965; *Brown* v.

*State,* 176 Ark. 1203, 4 S.W. 2d 947. If her testimony is true, it is highly unlikely that DeFee, having surrendered his paycheck, but having won his battle to keep his billfold, would walk away from home and leave it. Of course, the amount of money taken is of no concern, if any was taken. *Radcliff v. State,* 249 Ark. 1, 457 S.W. 2d 847. The failure of DeFee's assailant to search each of his pockets after he had been shot twice was only a circumstance for the jury to weigh.

After all, the jury might draw any reasonable inference from circumstantial evidence to the same extent it could from direct evidence. *Casteel v. State,* 202 Ark. 663, 152 S.W. 2d 554; *Moran v. State,* 179 Ark. 3, 13 S.W. 2d 828. We think it was reasonable for the jury to have drawn the inference that DeFee was robbed, when full credit is given to Mrs. DeFee's testimony. Certainly in the light of all the testimony independent of the confession, the evidence that he was robbed rises far above mere suspcion so that the jury, in arriving at its conclusion, did not have to resort only to speculation and conjecture.

When circumstantial evidence rises above suspicion and is properly connected, and when, viewing that evidence in the light most favorable to the state, the jury is not left to speculation and conjecture alone in arriving at its conlusions, it is basically a question for the jury to determine whether the evidence excludes every other reasonable hypothesis. *Ledford v. State,* 234 Ark. 226, 351 S.W. 2d 425; *O'Neal v. State,* 179 Ark. 1153, 15 S.W. 2d 976; *Caradine v. State,* 189 Ark. 771, 75 S.W. 2d 671. See also *Walker v. State,* 174 Ark. 1180, 298 S.W. 20; 30 Am. Jur. 2d 295, Evidence § 1125. It is only every other reasonable hypothesis, not every hypothesis, that must be excluded by the evidence. *Bartlett v. State,* 140 Ark. 553, 216 S.W. 33; *Bost v. State,* 140 Ark. 254, 215 S.W. 615. See also, *Walker v. State,* supra. The jury certainly should test the reasonableness of any other hypothesis.

It should be noted that Upton and his wife, who was his female companion at the time of their encounter with DeFee, both testified. Both denied that there was any robbery or attempt to rob. She said that the shooting was precipitated by DeFee's attempt to rape her. She said that while she and

DeFee were seated in the front seat of Upton's car with Upton driving, DeFee reached into the back seat of the car, got a shotgun of Upton's, laid it across her lap, and holding it on Upton, commanded that the vehicle be stopped. Then she said, while holding the gun on Upton, DeFee threw her on the ground, knelt over her and tried to remove her clothes. According to her, DeFee and Upton became involved in a struggle over the shotgun, resulting in its going off twice. She attributed an entirely different statement incriminating both herself and Upton which failed to refer to any advances by DeFee toward her, to the fact that she had been drinking and taking pills. She said the officers had made up the statement. She admitted that she had then made the statement that Upton took DeFee's billfold, but that it was untrue.

Upton testified that he did not put DeFee out of his car when the latter first became familiar with Mrs. Upton, because she asked him not to. Yet, he said that after they later stopped in El Dorado to check the transmission fluid in his car, DeFee was permitted to continue on the trip with them and that they had only gone two blocks when DeFee put a shotgun in his stomach and ordered him to turn up a dirt road and stop. He likewise testified that the shotgun went off during a struggle between the two men after DeFee had ordered Mrs. Upton to get on the ground. He denied robbing DeFee and said he did not see a billfold. He attributed his confession to his desire to protect his wife and the prosecuting attorney's alleged statement that she would burn in the electric chair.

We think the circumstantial evidence that DeFee was killed in the perpetration of a robbery is sufficiently connected to constitute substantial evidence to support the verdict when viewed in the light most favorable to the state.

The judgment is affirmed.