Jay CORE *v.* STATE of Arkansas

CR 78-218                                   578 S.W. 2d 581

Opinion delivered April 2, 1979
(Division II)

410

*Robert S. Gunter,* for appellant.

*Steve Clark,* Atty. Gen., by: *Ray Hartenstein,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant Jay Core was engaged in a business he described as "architectural antiques" or "the glorified junk business." He contends that the evidence was insufficient to support his conviction of the offense of theft by receiving, as defined by Ark. Stat. Ann. § 41-2206 (Repl. 1977), and that the court erred in denying his motion for a directed verdict. He was tried by the court, sitting without a jury. He argues that the state failed to produce evidence to show that he knowingly received the goods in question or that he knew, or had good reason to believe, that

the goods were stolen. He also argues that the trial court erroneously disregarded evidence supporting a defense. We affirm.

The statute applies to one who receives or retains stolen property of another, knowing, or having good reason to believe, it was stolen. The statute includes this provision:

> The unexplained possession or control by a person of recently stolen property or the acquisition by a person of property for a consideration known to be far below its reasonable value shall give rise to a presumption that he knows or believes that the property was stolen.

The property, belonging to one Louis Stafford, found in Core's possession on September 12, 1977, consisted of two Century three-phase motors, one of a 1-1/2 h.p. capacity and the other 7-1/2 h.p. A Reznor overhead heater and a Batson search vacuum pump were also identified by Stafford as his property.

The owner of the property testified that he obtained the heater and the motors from Maxie's Reliable Loan Office. He said that the larger motor was probably worth $225, the smaller one, $125, and the heater, $150. Core relinquished possession of the motors to Stafford, but not the heater. Stafford had positively identified this property, which he found at Core's place of business on September 12, 1977. Maxie Itzkowitz, proprietor of Maxie's Reliable Loan Office, testified that Stafford had purchased these three items from him "about in September 1977." He placed the value of one motor at $125 to $150, and the other[1] at "around $200." He said the heater would be worth about $150. Stafford said that a table saw had been taken from his place of business, but he could not identify one he saw at Core's.

---

[1]Appellant contends that this evidence should not be considered, because the motor was actually rated at 7-1/2 h.p. Through the trial it was referred to most often as being 10 h.p. or "about 10 h.p." After Itzkowitz had testified that he had sold the two motors to Stafford, and had stated the value of the smaller one, he was asked to state his opinion of the value of "the ten horse power Century motor." There was no chance that the fact-finder was misled by this alleged discrepancy.

Appellant's explanations of his possession of this property were, in some respects, vague and conflicting. Stafford testified that Core said that he didn't know if the person from whom he bought the "stuff" was white or black, male or female. The police officer who accompanied Stafford to Core's place of business testified that Core had said that he had bought some of the property from someone, but couldn't recall who it was. The officer produced a written statement signed by Core. In it, Core stated that he had purchased the two motors and a table saw from "one unknown person," approximately May 1, 1977, for $75 and the pump from "one unknown person," approximately June 1, 1977, for $150. In this statement Core said he could not remember whether the person was male or female, black or white, because of the lapse of time.

Core testified that the purchase of these items and some others was a little bit vague, but that he had purchased them from someone who came to his place peddling some junk. He stated that he did not know this person and had never seen him before, or since, the purchase. According to Core's best recollection, he paid $150 to $250 for everything he bought from this person. Later he said that he paid $150 for everything in question. He had gone back to his books for verification of this amount because of the lapse of time. To the best of his recollection, he had not written a check for the purchase price, although he ordinarily tried to do so. He said the standard procedure in such transactions was "cash for cash," because "these guys" are basically just peddling scrap metal and want their money immediately. He couldn't remember examining these items for evidence of ownership, as he normally did.

Core expressed the opinion that the motors were scrap and said that he didn't normally buy this sort of item, but that his specific purpose for buying these was to use the electric motors in the restoration of metals. Later he said that he bought the motors simply because they were there, but admitted that he had said he bought them for scrap and had also said that he was going to use them. Still later, he said that they were of no value to him whatsoever. He stated that the vacuum pump was simply something that was there

which he would not ordinarily use, but it was something of particular interest to him. He said that he probably paid more than a fair price for it because fair price would have been scrap price.

Core denied buying the heater from this man or men. He testified that this Reznor heater was in his building when he first occupied it.

We find ample evidence to support a finding that Core received the motors, pump and heater having good reason to believe that they were stolen and to give rise to the presumption that he knew or believed they were stolen.

Appellant argues that the presumption is inapplicable because 3-1/2 to 4 months elapsed between his purchase and the time he had any knowledge that the goods might have been stolen. In his argument, appellant says that, if all inferences are drawn in his favor, it is apparent that his testimony is consistent with the possibility that these items had been removed from Stafford's building long before Stafford discovered, on August 30, 1977, that they were missing. We cannot agree with appellant's argument. In the first place, the drawing of reasonable inferences from the testimony was for the trial judge as fact-finder and not for this court. See *Upton v. State,* 257 Ark. 424, 516 S.W. 2d 904; *Reynolds v. State,* 211 Ark. 383, 200 S.W. 2d 806; *Shoop v. State,* 209 Ark. 498, 190 S.W. 2d 988; *Morrison-Knudsen Co., Inc. v. Lea,* 208 Ark. 260, 186 S.W. 2d 429; *Cox v. State Farm Fire & Casualty Co.,* 240 Ark. 60, 398 S.W. 2d 60.

We cannot say that it was unreasonable for the trial judge to draw an inference unfavorable to appellant on the evidence before us. In the next place, it would have been impossible for Core to have bought these items when he said he did if the testimony of Maxie Itzkowitz as to the date he sold them to Stafford is accepted as true. Obviously, the trial judge resolved the question of the credibility against appellant and in favor of Itzkowitz. This was a matter which addressed itself to the trial judge, not this court. *Horton v. State,* 262 Ark. 211, 555 S.W. 2d 226.

Appellant also seems to think that one of the two alternate bases for the presumption of knowledge or belief of the possessor, i.e., unexplained possession or control, is eliminated simply whenever the possessor gives a plausible explanation for his possession. This is not so. In this respect, the new statute (§ 41-2206) only restated law existing when it was adopted. See Commentary to § 41-2206; *Boyette v. State,* 254 Ark. 320, 493 S.W. 2d 428; *Bridges v. State,* 177 Ark. 1193, 9 S.W. 2d 240. The trier of fact is not required to believe the testimony of any witness. *Hamilton v. State,* 262 Ark. 366, 556 S.W. 2d 884; *Clark v. State,* 246 Ark. 1151, 442 S.W. 2d 225; *Maples v. State,* 225 Ark. 785, 286 S.W. 2d 15. See also, *Smith v. State,* 216 Ark. 1, 223 S.W. 2d 1011, cert. den. 339 U.S. 916, 70 S. Ct. 562, 94 L. Ed. 1341 (1950). This is especially true where the testimony of the accused, probably the person most interested in the outcome of the trial, is involved. See *Duncan v. State,* 196 Ark. 171, 117 S.W. 2d 36; *Maples v. State,* supra. Here there were valid reasons for discounting the credibility of Core, as indicated by inconsistencies in his testimony, such as the price he paid for the items involved and the number of sellers from whom he purchased. The reasonableness and sufficiency of his explanation were matters to be determined by the fact-finder. *Boyette v. State,* supra; *Shoop v. State,* supra. In doing so, the trial judge had the right to accept such portions of the testimony as he believed to be true and to reject those he believed to be false. *Richie v. State,* 261 Ark. 7, 545 S.W. 2d 638.

Furthermore, there was sufficient evidence of the second of the alternate bases which give rise to the presumption of knowledge. It is difficult to decide just what Core paid for the articles positively identified because he admitted that at least one purchase included items which were not identified as the property of Stafford and there is no testimony showing what part of the purchase price was attributable to these additional items. Giving his testimony its strongest probative force, there is no evidence that Core paid more than $250 for all purchases which included the items identified by Stafford. If Stafford's testimony is accepted, his property was worth $525. Itzkowitz valued it at $475. No witness testified about the value of the pump, but there was no reason for the trial court to believe it had no value. Even though value may be a

matter of opinion, the question of fact as to whether Core paid a consideration he knew to be far below reasonable value was a matter the trial court resolved against appellant.[2] On appellate review, we consider only that evidence most favorable to the appellee. *Maples* v. *State,* supra. In that light, we find it sufficient.

Appellant contends that we should follow the holding of *State* v. *Thomas,* 13 Or. App. 164, 509 P. 2d 446 (1973), because the critical statutory language as to belief of the receiver [§ 41-2206 (1)] was adopted from a section of the Oregon Criminal Code. In that case, it was held that before a jury could find one accused of this offense guilty, it must find that the defendant had either actual knowledge or the belief it was stolen, and the fact that some other person (or a reasonable man), under the same circumstances, would have known, or had good reason to believe, the property was stolen is insufficient. This decision was based upon decisions of Oregon courts construing a prior statute, so it does not necessarily control our construction of our statute. The commentary to § 41-2206 clearly indicates that the drafters of our code did not intend to adopt the Oregon judicial construction because it indicates that a jury verdict may be based upon evidence that the accused was "on notice of the facts that would lead a reasonable person to entertain such a belief."

This is a question we need not decide in this case. In *Thomas,* the question involved was the propriety of a jury instruction covering the required culpable mental state. There is no indication in this record that the trial judge applied the

[2]We do not overlook appellant's argument that only the relationship of the price paid for the two motors to the value of those motors should be considered. This argument is based upon a statement of the trial judge in ruling on an objection to testimony relating to an unidentified person who accompanied Stafford to Core's place of business. Appellant interprets this statement to mean that the judge considered that the state's evidence had failed as to any of the property described in the information, except for the two motors. We cannot accept this version, because of the action of the judge in requiring appellant to make restitution to Stafford by paying him $500. This could not have been for the two motors returned to Stafford. It could only have been for the Reznor heater and the vacuum pump, and perhaps other items not found. These items were the subject of a colloquy among the judge, the deputy prosecuting attorney, appellant and appellant's attorney, just prior to pronouncement of the sentence and the terms of suspension of part of it.

test to a "reasonable man" and did not decide the question whether Jay Core had good reason to believe this property was stolen. As we have pointed out, there is substantial evidence that Core did have such reason.

Appellant also argues that the trial judge disregarded evidence which constituted a complete defense to the charge. He relies upon Ark. Stat. Ann. § 41-2206 (4) (Repl. 1977), which provides that it is a defense that the property is received, retained or disposed of with the *purpose* of restoring it to the owner. He also relies upon the evidence that he did release the motors to Stafford and other testimony of specific instances in which he had released other property to owners who established their ownership. Even if we accept appellant's position that there was no identification of anything except the two motors, there is not a scintilla of evidence that Core's purpose at the time of the purchase was restoration to the proper owner. His own testimony about his purpose was to the contrary. The defense is not applicable, as appellant seems to think, when property is returned when "the defendant was confronted." The purpose must exist at the time of the purchase and it cannot be based upon a general policy of the buyer to relinquish property purchased by him to a claimant who can identify it as his to the satisfaction of the buyer.

We agree. HARRIS, C.J., HOLT and HICKMAN, JJ.